DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC and ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JINGNA ZHANG, an individual; SARAH ANDERSEN, an individual; HOPE LARSON, an individual; and JESSICA FINK, an individual,<br><br>    Individual and Representative Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>    Defendants. | CASE NO.:  5:24-cv-02531-EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Filed Concurrently Herewith:**<br>Request for Judicial Notice and Consideration of Materials Incorporated by Reference<br><br>Date:          October 17, 2024<br>Time:          9 a.m.<br>Courtroom:  4<br>Judge:  Hon. Edward J. Davila |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION ...............................................................................1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...........................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

PLAINTIFFS' ALLEGATIONS............................................................................................3

ARGUMENT ....................................................................................................................6

    I.      The Complaint Improperly Asserts Infringement of Unidentified Works. ............6

    II.     Plaintiffs Sarah Andersen and Hope Larson Failed to Allege Registration of Their Allegedly Infringed Images. ....................................................................8

    III.    Plaintiffs Have Not Plausibly Alleged That Any AI Model Is an Infringing Derivative Work. .......................................................................................12

    IV.    The Complaint Fails to State a Claim for Vicarious Copyright Infringement Against Alphabet..................................................................................13

CONCLUSION ...............................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Adobe Sys. Inc. v. Software Speedy*,
    2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ................................................................ 6

*Ambrosetti v. Ore. Cath. Press*,
    458 F. Supp. 3d 1013 (N.D. Ind. 2020) ........................................................................ 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 14

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) .................................................................................. 2, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 14

*Broadvision Inc. v. Gen. Elec. Co.*,
    2009 WL 1392059 (S.D.N.Y. May 5, 2009) ............................................................. 14

*Cole v. John Wiley & Sons, Inc.*,
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .............................................................. 7

*DBW Partners, LLC v. Bloomberg, L.P.*,
    2019 WL 5892489 (D.D.C. Nov. 12, 2019) ............................................................... 6

*Epikhin v. Game Insight N. Am.*,
    145 F. Supp. 3d 896 (N.D. Cal. 2015) ........................................................................ 8

*Flava Works, Inc. v. Clavio*,
    2012 WL 2459146 (N.D. Ill. June 27, 2012) .............................................................. 7

*Folkens v. Wyland Worldwide, LLC*,
    882 F.3d 768 (9th Cir. 2018) ...................................................................................... 2

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
    297 F.R.D. 64 (S.D.N.Y. 2013) .................................................................................. 6

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019) ..................................................................................................... 8

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
    2017 WL 3477746 (C.D. Cal. May 12, 2017) ............................................................ 6

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) ........................................................................................................ 2

*Hartmann v. Amazon.com, Inc.*,
    2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ......................................................... 14

*Hartmann v. Google LLC*,
    2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ............................................................. 14

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
    755 F.3d 1038 (9th Cir. 2014) ................................................................................. 9

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ........................................................ 12

*Kifle v. YouTube LLC*,
    2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) .......................................................... 7

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ................................................................................. 8

*Kremer v. Alphabet Inc.*,
    2024 WL 923900 (M.D. Tenn. Mar. 4, 2024) ....................................................... 15

*Lambertini v. Fain*,
    2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014) ......................................................... 6

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) ........................................................... 15

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ............................................................................... 13

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................................................... 8

*Manigault-Johnson v. Google, LLC*,
    2019 WL 3006646 (D.S.C. Mar. 31, 2019) ........................................................... 15

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010) ................................................................................... 2

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
    2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014) ....................................................... 14

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
    2014 WL 280391 (N.D. Cal. Jan. 24, 2014) .......................................................... 14

*Netbula, LLC v. Chordiant Software, Inc.*,
    2009 WL 750201 (N.D. Cal. Mar. 20, 2009) ......................................................... 14

*Payne v. Manilow*,
    2019 WL 4143308 (C.D. Cal. Apr. 2, 2019) .......................................................... 14

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ................................................................................... 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................. 13

*Perry v. Mary Ann Liebert, Inc.*,
    2018 WL 2561029 (S.D.N.Y. June 4, 2018) ......................................................... 13

*Premier Tracks, LLC v. Fox Broad. Co.*,
    2012 WL 13012714 (C.D. Cal. Dec. 18, 2012) ....................................................... 6

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ........................................................................... 7, 13

*Ritani, LLC v. Aghjayan*,
    880 F. Supp. 2d 425 (S.D.N.Y. 2012) ...................................................................... 13

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) ..................................................................... 6, 7

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ................................................................................. 12

*Structured Asset Sales, LLC v. Sheeran*,
    559 F. Supp. 3d 172 (S.D.N.Y. 2021) ...................................................................... 12

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......................................................... 13

*UAB "Planner 5D" v. Facebook, Inc.*,
    2020 WL 4260733 (N.D. Cal. July 24, 2020) ............................................................ 8

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022) ............................................................................................ 8, 11

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................................... 14

*Ward v. Mitchell*,
    2013 WL 1758840 (N.D. Cal. Apr. 24, 2013) ............................................................ 8

*Williby v. Hearst Corp.*,
    2017 WL 1210036 (N.D. Cal. Mar. 31, 2017) .......................................................... 14

*Wolo Mfg. Corp. v. ABC Corp.*,
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........................................................................ 6

**STATUTES**

17 U.S.C. § 101 ................................................................................................... 9, 12

17 U.S.C. § 102 ......................................................................................................... 2

17 U.S.C. § 103 ......................................................................................................... 9

17 U.S.C. § 411 ................................................................................................... 8, 11

17 U.S.C. § 412 ......................................................................................................... 7

**OTHER AUTHORITIES**

Compendium of U.S. Copyright Office Practices (3rd ed. Jan. 28, 2021) ................................. 9, 10

*dmarcian, Inc. v. DMARC Advisor BV*,
    No. 1:21-cv-00067-MR, ECF No. 272-1 (W.D.N.C. Oct. 16, 2023) .............................. 10

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*,
  No. 2:20-cv-11181-CAS-JPR, ECF No. 85 (C.D. Cal. Apr. 13, 2022) ........................... 10

*PalatiumCare, Inc. v. Notify LLC and Lucas Narbatovics*,
  No. 2:22-cv-00217-JPS, ECF No. 101 (E.D. Wis. July 11, 2023) ................................... 10

1

**NOTICE OF MOTION AND MOTION**

2      **PLEASE TAKE NOTICE** that on October 17, 2024, at 9 a.m., Defendants Google LLC

3 ("Google") and Alphabet Inc. ("Alphabet") (collectively, "Defendants") will move this Court

4 pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing parts of Count I and

5 all of Count II of Plaintiffs' Complaint (ECF No. 1 or "Compl.").

6      **STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

7      Defendants respectfully request that the Court dismiss for failure to state a claim (1)

8 Plaintiffs' direct and vicarious copyright infringement claims as to images not identified in the

9 Complaint; (2) Plaintiffs Sarah Andersen's and Hope Larson's direct and vicarious copyright

10 infringement claims for failure to plead valid copyright registrations covering the allegedly

11 infringed images; (3) Plaintiffs' direct and vicarious copyright infringement claims that certain of

12 Defendants' AI models are infringing derivative works; and (4) Plaintiffs' claim that Alphabet is

13 vicariously liable for the allegedly infringing activity of its corporate subsidiary, Google.

14      **MEMORANDUM OF POINTS AND AUTHORITIES**

15      This case concerns artificial intelligence ("AI") models designed to enhance human

16 creativity. These models are software trained to identify relationships and patterns in data and

17 generate new content, such as text and images, based on that training. Some models are trained

18 on vast text repositories, enabling the models to predict the sequence of words best suited to

19 answer a question, solve a math problem, or create original stories. Other models, like those at

20 issue here, are trained on hundreds of millions or even billions of publicly available images to

21 recognize the quintessential characteristics and dimensions of the people, places, and things

22 depicted in them, and, in turn, generate new images in response to users' prompts.

23      The named plaintiffs in this putative class action are four visual artists who assert that

24 their copyrights were infringed when certain images they created were allegedly copied and used

25 to train Imagen, an early Google AI model capable of generating images based on text inputs, as

26 well as other AI models Google developed. They contend that a third-party organization,

27 LAION, referenced their images in LAION-400M, a dataset of images that LAION promoted for

28 training AI models. Then, according to Plaintiffs, Google copied the images referenced in

1    LAION-400M for model training purposes. Plaintiffs further allege that Alphabet is vicariously

2    liable for this conduct as Google's corporate parent.

3         One of the fundamental issues in this lawsuit will be whether copyright law bars the use

4    of publicly accessible content to enable generative AI models to learn the ideas and facts that

5    constitute humanity's collective knowledge. Ideas and facts belong to the public domain, *see* 17

6    U.S.C. § 102, including ideas about how to depict certain topics and subjects visually, *see, e.g.*,

7    *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (depiction of two

8    dolphins crossing underwater "is an idea first expressed in nature and as such is within the

9    common heritage of humankind"); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 915 (9th Cir.

10   2010) ("The concept of depicting a young, fashion-forward female with exaggerated features,

11   including an oversized head and feet, is … an unprotectable idea."). Defendants will ultimately

12   prevail because copyright law does not grant Plaintiffs a monopoly on such ideas. Just as any

13   member of the public may view Plaintiffs' images and learn from them without violating

14   copyright law, so too may an AI model. What is more, for good reason, a long line of precedent

15   recognizes that a party may make "fair use" of copyrighted content to create new, different, or

16   innovative products and works. *See Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015)

17   (fair use to scan millions of copyrighted books to create innovative tool for searching books);

18   *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) (fair use to replicate copyrighted software

19   programming interfaces to create a new mobile platform). That is all Google stands accused of

20   here.

21        Yet before these questions of copyright law are joined, Plaintiffs must clear several

22   threshold hurdles and plausibly plead the individualized elements required just to state a

23   copyright claim. Plaintiffs have not done so, and their complaint is subject to dismissal on at

24   least four grounds.

25        First, to state a plausible infringement claim and provide fair notice to the defendant, a

26   plaintiff must specifically identify the copyrighted works allegedly infringed. Plaintiffs

27   improperly seek to proceed based on an open-ended "nonexhaustive" and "not … complete" list

28

of allegedly infringed works. *See* Compl. ¶¶ 15–16. That is improper as a matter of law. Plaintiffs' infringement claims for any unnamed works should be dismissed.

Second, to sue for copyright infringement, a plaintiff must plausibly plead that she registered the allegedly infringed copyrighted work with the United States Copyright Office before filing suit. But Plaintiffs have failed to do so for several of the asserted works. Plaintiff Sarah Andersen cites five registrations that she claims cover the works she has put at issue. But those registrations cover only new art and *compilations* of previously published art; they *exclude individual works* of previously-published art. At least some of the allegedly infringed images at issue indisputably were previously published and are thus excluded from these registrations. And Ms. Andersen fails to allege that the other images were new art covered by their registrations. Separately, Plaintiff Hope Larson asserts infringement of an image supposedly registered as part of her book, "Chiggers," but Library of Congress records confirm that image was not submitted and registered as part of that book. Absent registrations for the works at issue, Ms. Andersen's and Ms. Larson's claims cannot proceed.

Third, pleading a copyright infringement claim requires alleging substantial similarity between protected expression in the copyrighted work and the allegedly infringing work. Plaintiffs assert that Google's AI model, Imagen, is itself an infringing derivative work, but have failed to plausibly allege that the model itself re-presents protected expression from their images.

Finally, a claim for vicarious copyright infringement requires pleading that the defendant had the right and ability to control the infringing activity and obtained a direct financial benefit from it. Plaintiffs' vicarious liability claim against Alphabet rests on nothing other than the fact that Alphabet is Google's corporate parent. That, by itself, is insufficient to render Alphabet liable for Google's supposed infringement under basic principles of corporate and copyright law.

For each of these reasons, Google and Alphabet respectfully request the Court grant their motion to dismiss.

## PLAINTIFFS' ALLEGATIONS

**Defendants.** Google is a leading provider of internet-related services, including search, advertising, and cloud computing. *See* Compl. ¶ 21. Google is developing AI models that expand

the bounds of human productivity and creativity. Compl. ¶¶ 21–33. One such model is "Imagen, a text-to-image diffusion model that takes as input a short text description of an image and then uses AI techniques to generate an image in response to the prompt." Compl. ¶ 22.

Alphabet is Google's corporate parent. Compl. ¶¶ 7, 18, 58. It is a stock holding company with no operations of its own.[1]

**Plaintiffs.** Plaintiffs Jingna Zhang, Sarah Andersen, Hope Larson, and Jessica Fink are four visual artists who claim to own U.S. registered copyrights in graphic novels, photograph collections, and compilations of webcomics. Compl. ¶¶ 11–15. Their Complaint includes a "nonexhaustive list" of copyright registrations, and a "nonexhaustive list" of images allegedly infringed by Defendants. Compl. ¶ 15; ECF No. 1-1 ("Ex. A"); ECF No. 1-2 ("Ex. B").

**Plaintiffs' Claims.** Plaintiffs allege that a third-party organization called LAION has been releasing "datasets of training images … for training machine-learning models, which are now widely used in the AI industry." Compl. ¶ 36. In 2021, LAION released LAION-400M, a dataset concerning "400 million training images assembled from images accessible on the public internet." Compl. ¶ 37. The dataset itself does not include the images, but rather includes "metadata" about the images, such as a text caption for the image and a URL for where the image can be found online. Compl. ¶¶ 40–41. According to Plaintiffs, because the dataset was freely available and searchable online, they were able to search it for references to their own images. *See* Compl. ¶¶ 37–38, 41. Plaintiffs claim that 19 out of the over 400 million images referenced in the LAION-400M dataset are their copyrighted works. *See* Comp. ¶¶ 15–16, 25, 51; Compl., Ex. B at 2–20 (identifying 19 "training image[s]"). From this, they reason that anyone that used the dataset for training purposes, necessarily used and thereby infringed their copyrighted images.

---

[1] *E.g.*, Alphabet Inc., Annual Report (Form 10-K) 17 (Feb. 11, 2016), https://www.sec.gov/Archives/edgar/data/1288776/000165204416000012/goog10-k2015.htm (stating that Alphabet is "a holding company with no business operations of its own").

In May 2022, Google researchers announced that they had developed a text-to-image model called Imagen. Compl. ¶ 23. In an academic paper they published, the researchers explained that their model had been trained on data drawn from multiple sources, including internal datasets and the LAION-400M dataset, which had been filtered to remove "noise and undesirable content." *See* Saharia, et al., *Photorealistic Text-to-Image Diffusion Models with Deep Language Understanding*, https://arxiv.org/pdf/2205.11487, at 7, 9; Compl. ¶ 23. Plaintiffs plainly mischaracterize this research paper as "admi[tting]" that Google copied and trained Imagen and subsequent AI models on every image in the LAION-400M dataset, including the 19 images in Exhibit B to the Complaint in which they claim to own the copyrights. *See* Compl. ¶¶ 23, 53–55.[2]

Based on these allegations, Plaintiffs assert three copyright infringement theories. First, Plaintiffs claim that Google committed direct copyright infringement by making copies of the images referenced in LAION-400M, including Plaintiffs' own, that Google then used to train Imagen. Compl. ¶¶ 54–55. Plaintiffs also allege, on unstated information and belief, that Google used images referenced in the LAION-400M dataset to train AI models other than Imagen, such as Imagen 2 and Gemini. Compl. ¶ 53. Second, Plaintiffs assert that Google committed direct copyright infringement by creating the Imagen model, which they contend "is itself an infringing derivative" of their images referenced in LAION-400M. Compl. ¶ 6. Third, Plaintiffs assert that "Alphabet, as the corporate parent of Google," is vicariously liable for the direct copyright infringement allegedly committed by Google. Compl. ¶¶ 7, 58–61.

***Class Allegations.*** Despite the abundance of authority rejecting class actions in the copyright infringement context, Plaintiffs seek to represent a class of "[a]ll persons or entities domiciled in the United States that own a United States copyright in any work that Google used as a training image for the Google–LAION Models" during a class period that "begins on at least

---

[2] The Complaint also mentions other datasets released by LAION, including LAION-5B and LAION-Aesthetics. Compl. ¶¶ 46–49. But Plaintiffs do not assert infringement claims based on any alleged use of these datasets or any dataset other than LAION-400M. *See* Compl. ¶¶ 53–55.

1    April 26, 2021 and runs through the present." Compl. ¶¶ 62–63. "Google-LAION Models" are

2    defined as "Imagen and other models that Google trained on LAION-400M." Compl. ¶ 53.

3                                        **ARGUMENT**

4    **I.      The Complaint Improperly Asserts Infringement of Unidentified Works.**

5                A copyright infringement lawsuit is "'a specific lawsuit by a specific plaintiff against a

6    specific defendant about specific copyrighted [works].'" *Perfect 10, Inc. v. Giganews, Inc.*, 847

7    F.3d 657, 673 (9th Cir. 2017) (citation omitted). It is not a "'lawsuit against copyright

8    infringement in general.'" *Id.* (citation omitted). Indeed, "[e]very copyright claim turns 'upon

9    facts which are particular to that single claim of infringement, and separate from all the other

10   claims.'" *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) (quoting

11   *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 66 (S.D.N.Y. 2013)).

12              Accordingly, a copyright infringement "complaint must specifically identify the works

13   that the plaintiff claims the defendant has infringed." Paul Goldstein, Goldstein on Copyright

14   § 16.1 (3d ed., 2021-1 Supp.). That identification must be complete. Courts have routinely

15   required plaintiffs to name all allegedly infringed works in their complaints. *See, e.g.*, *Wolo Mfg.*

16   *Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 202 (E.D.N.Y. 2018) (dismissing copyright claims

17   with respect to "unspecified 'Other Works'"); *Premier Tracks, LLC v. Fox Broad. Co.*, 2012 WL

18   13012714, at *8 (C.D. Cal. Dec. 18, 2012) (Plaintiffs cannot maintain claims for works "yet to

19   be identified"); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 WL 3477746, at

20   *8 (C.D. Cal. May 12, 2017) (copyright "action cannot proceed as to any alleged infringement"

21   of unpleaded works); *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *6 (N.D. Cal.

22   Dec. 16, 2014) (granting Rule 12(e) motion; ordering plaintiff "to amend its complaint to

23   expressly list the trademarks and copyrights it has a good faith basis for believing Defendants

24   have infringed"); *Lambertini v. Fain*, 2014 WL 4659266, at *3 (E.D.N.Y. Sept. 17, 2014)

25   ("Plaintiff has the burden of identifying the specific works at issue in her pleading."); *DBW*

26   *Partners, LLC v. Bloomberg, L.P.*, 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (dismissing

27   copyright infringement claim; holding that plaintiff could not plausibly allege defendant "is

28

liable for copyright infringement" without "first identify[ing] the copyrighted works that form the basis of its claims").

There is an obvious reason for requiring copyright plaintiffs to plead each specific work at issue: identifying the work is necessary to state a plausible claim. To state a claim for copyright infringement, a plaintiff must plausibly allege that "he owns a valid copyright [in the asserted work]" and "that [the defendant] copied protected aspects of the [work's] expression." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018). A plaintiff must also "plausibly allege[] that he obtained a valid copyright registration for [the work] before initiating th[e] lawsuit." *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021). Without naming the work, a plaintiff cannot plausibly allege the required elements of ownership, infringement, or pre-suit registration. *See Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012).

Identification of the allegedly infringed works is also necessary to provide Defendants with fair notice of the claims against them and to enable Defendants to answer the complaint. Infringement claims are fact- and infringement-specific and are "subject to defenses that require their own individualized inquiries." *Schneider*, 674 F. Supp. 3d at 717. Each work and infringement involved in the lawsuit will require Defendants to investigate, among other things, the existence and timing of the registration (including to determine availability of statutory damages under 17 U.S.C. § 412); whether a plaintiff actually owns the copyright in the work; whether the work was actually copied and used by Defendants; whether Defendants possess a license; and whether the claim is barred by the applicable statute of limitations.

Exhibit B of the complaint here lists certain specific images that Plaintiffs contend Defendants infringed. *See* Compl. ¶ 15; Compl., Ex. B (list of allegedly infringed images). But Plaintiffs also purport to assert open-ended infringement claims, declaring that their list is merely "representative" and not "exhaustive or complete." Compl. ¶ 16. That is improper. A copyright plaintiff cannot "list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works." *Cole v. John Wiley & Sons,*

1   *Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012). Plaintiffs' claims must be limited to the

2   images identified in Exhibit B to the Complaint and dismissed without prejudice as to any others.

3          Plaintiffs have no excuse for refusing to provide a "complete list." Compl. ¶ 16.

4   Plaintiffs' infringement theory is that Defendants copied every image referenced in the LAION-

5   400M dataset, which they allege was publicly released in August 2021. Compl. ¶¶ 37, 54.

6   Plaintiffs reviewed and searched this dataset before suit. *See* Compl. ¶ 16; Compl., Ex. B.

7   Plaintiffs thus had ample opportunity to identify every work referenced in the dataset that they

8   contend Defendants infringed.

9          Plaintiffs' direct and vicarious infringement claims should be dismissed as to any images

10  other than those listed in Exhibit B to the Complaint.

11  **II.     Plaintiffs Sarah Andersen and Hope Larson Failed to Allege Registration of Their**

12  **         Allegedly Infringed Images.**

13         To state a claim for copyright infringement, a complaint must "'plausibly plead on its

14  face' copyright registrations covering the works that the defendant allegedly infringed." *UAB*

15  *"Planner 5D" v. Facebook, Inc.*, 2020 WL 4260733, at *2 (N.D. Cal. July 24, 2020) (citation

16  omitted). A valid registration is a "prerequisite for bringing a 'civil action for infringement' of

17  the copyrighted work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181

18  (2022) (quoting 17 U.S.C. § 411(a)); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,

19  586 U.S. 296, 296–97 (2019) (same). If a work is not covered by a valid registration, a lawsuit

20  for infringement of that work is "foreclosed." *Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d

21  896, 902 (N.D. Cal. 2015) (quoting *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th

22  Cir. 1998)). Pre-suit registration covering the works at issue must be pleaded by the complaint,

23  and failure to plead registration of the allegedly infringed material requires dismissal. *See UAB*

24  *"Planner5D"*, 2020 WL 4260733, at *2; *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052,

25  1059–60 (N.D. Cal. 2022) (dismissing claim for failure to allege "that the photos at issue are

26  registered"); *Ambrosetti v. Ore. Cath. Press*, 458 F. Supp. 3d 1013, 1018–19 (N.D. Ind. 2020)

27  (dismissing infringement claim because unregistered work at issue "was published prior to its

28  inclusion" in a subsequent registered work and thus not covered by the registration); *Ward v.*

*Mitchell*, 2013 WL 1758840, at *4 (N.D. Cal. Apr. 24, 2013) (dismissing claim for failure to allege registration of the copyrighted works).

   **Plaintiff Sarah Andersen.** Ms. Andersen identifies five registrations, but she has failed to plead that these registrations cover the six images she contends Defendants allegedly infringed. *See* Compl., Ex. A at 7–11 (listing Andersen's five registrations); *id.*, Ex. B at 15–20 (listing Andersen's six allegedly infringed images).

   Ms. Andersen is a cartoonist and illustrator for "Sarah's Scribbles," a webcomic that she publishes on her website. *See* Compl. ¶ 12; *id.*, Ex. A at 7–11; https://sarahcandersen.com/. Over the years, she has published print books compiling her previously-published webcomics, such as "Adulthood Is a Myth: a Sarah's Scribbles Collection," and a calendar featuring her previously-published webcomics, "Adulthood is a Myth: A 'Sarah's Scribbles' 2021 Wall Calendar." *See* Compl., Ex. A at 7–8. Andersen asserts the registrations for four books and a calendar in this lawsuit. Compl., Ex. A at 7–11.

   All five registrations are for compilations, *see* Compl., Ex. A at 7–11, which are "formed by the collection and assembling of preexisting materials." 17 U.S.C. § 101. Registration of a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103. As the Copyright Office has repeatedly explained, a compilation registration "does not cover any preexisting material or data that has been previously published." United States Copyright Office, *Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) ("Compendium") § 618.6; *see also* Compendium § 508.2; § 1008.2 (confirming "longstanding practice of precluding previously published material from a claim in a collective work").[3] And identifying unclaimable material such as previously published works "is essential to defining the claim that

   [3] Courts "defer to the Copyright Office's interpretations in the appropriate circumstances," such as when the Copyright Office offers persuasive reasoning in support of its interpretation of the Copyright Act. *See Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014).

is being registered." Compendium § 621.1; *see also* § 1008.2. The Register of Copyrights has reaffirmed that position in court submissions around the country. *See, e.g.*, *PalatiumCare, Inc. v. Notify LLC and Lucas Narbatovics*, No. 2:22-cv-00217-JPS, ECF No. 101, at 9 (E.D. Wis. July 11, 2023) ("a compilation or derivative work registration will not cover any previously published, previously registered, or public domain material"); *Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-cv-11181-CAS-JPR, ECF No. 85, at 9 (C.D. Cal. Apr. 13, 2022) ("Whether owned by another person or owned by the applicant, material that was previously published or previously registered is considered 'unclaimable'"); *dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-00067-MR, ECF No. 272-1, at 19 n.59 (W.D.N.C. Oct. 16, 2023) ("Unclaimable materials, including previously published material, that may appear in a work may not be registered").

Three of Ms. Andersen's five registrations expressly disclose the presence of previously-published (and thus unclaimable) material. *See* Compl., Ex. A at 7–8, 10 (disclosing, as "[p]re-existing [m]aterial," "previously published art with accompanying text," "[s]ome cartoons [that] previously appeared on author's website," and "[s]ome cartoons [that were] previously published online"). Consistent with that disclosure, the Certificates of Registration for these three copyrights explicitly note that these previously-published materials are "excluded from this claim." Declaration of Qifan Huang in Support of Defendants' Request for Judicial Notice and Consideration of Materials Incorporated by Reference ("Huang Decl.") Exs. 1, 2, 3.

Ms. Andersen's other two registrations do not disclose that the compilations being registered contain previously-published, unclaimable artwork. But they do. According to Ms. Andersen, two of the images at issue, Compl., Ex. B at 17–18 (Andersen training images 3 and 4), were registered as part of the "Big Mushy Happy Lump" collection published on December 12, 2016, *see* Compl., Ex. A at 9. But Ms. Andersen previously published these two individual images online. *See* Huang Dec. Exs. 4–5 (showing Ms. Andersen published these images on X, formerly Twitter, on December 23, 2015 and February 3, 2016, respectively). Ms. Andersen claims that another image, Compl., Ex. B at 20 (Andersen training image 6), was registered as part of the "Oddball" collection published on December 7, 2021 (*see id.*, Ex. A at 11). But Ms.

1    Andersen also previously published this individual image online. *See* Huang Decl. Ex. 6

2    (showing Ms. Andersen published this image on X on October 24, 2020). Ms. Andersen's failure

3    to disclose to the Copyright Office her inclusion of unclaimable material in these two

4    registrations may ultimately require referral to the Register of Copyrights and invalidation of the

5    registrations under 17 U.S.C. § 411(b). *See Unicolors*, 595 U.S. at 181.[4]

6           Regardless, for now, Ms. Andersen has failed to plausibly plead that her asserted

7    registrations cover her allegedly infringed images. At least three of Ms. Andersen's six allegedly

8    infringed images (Compl., Ex. B at 17–18, 20 (Andersen training images 3, 4, and 6)) were

9    previously published online before their inclusion in the print works Ms. Andersen later

10   registered. *See* Huang Decl. ¶¶ 5–7; Huang Decl. Exs. 4, 5, 6. These images are thus not covered

11   by the registrations for the subsequent print works. The remaining three images (Compl., Ex. B

12   at 15–16, 19) come from compilations whose registrations expressly note the exclusion of

13   unclaimable material, Huang Decl. Exs. 1, 2, 3. Yet the Complaint never alleges that these

14   images are new, claimable material actually covered by the registrations at issue. *See* Compl.,

15   Ex. A at 7–8, 10; Compl. ¶ 15. Indeed, the Complaint relies wholly on two summary exhibits.

16   *See* Compl. ¶ 15 (citing Ex. A and Ex. B). That cannot serve as a plausible allegation that Ms.

17   Andersen validly registered the allegedly infringed images, given the obvious inclusion of

18   unclaimable material in the registrations.

19          Because the Complaint fails to plausibly plead valid registrations covering Andersen's

20   images, her direct and vicarious infringement claims should be dismissed.

21   _____

22          [4] Other registrations asserted by the Plaintiffs also appear to contain inaccuracies warranting

23   referral to the Register of Copyrights. Plaintiff Jessica Fink, for example, relies on a registration

24   for a graphic novel, *Chester 5000 XYV, Book 2: Isabelle & George HC,* that she told the

25   Copyright Office was published in 2016. *See* Compl., Ex. A at 4. But Ms. Fink appears to have

26   started publishing the graphic novel in daily webcomic form in 2011, more than five years

27   earlier. *See* Jess Fink, CHESTER BOOK TWO: Isabelle and George: START READING

28   HERE, Chester 5000 XYV (Jan. 1, 2011), https://jessfink.com/Chester5000XYV/?p=332.

1    ***Plaintiff Hope Larson.*** Plaintiff Hope Larson contends that Defendants infringed her

2    "training image 2," an image supposedly registered as part of her book, "Chiggers." Compl., Ex.

3    B at 3. But Library of Congress records confirm that the image was not submitted and registered

4    as part of "Chiggers." A registration for a work "only covers the material that is included in the

5    deposit copy(ies)." *Structured Asset Sales, LLC v. Sheeran*, 559 F. Supp. 3d 172, 174 (S.D.N.Y.

6    2021) (cleaned up); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) (en banc)

7    ("[T]he scope of [a] copyright is limited by the deposit copy."). The deposit copy for "Chiggers"

8    does not contain Ms. Larson's "training image 2." *See* Huang Decl. Ex. 7 (deposit copy for

9    "Chiggers"). As a result, the registration for "Chiggers" does not cover that image, and any claim

10   based on the image must be dismissed for lack of pre-suit registration.

11   **III.    Plaintiffs Have Not Plausibly Alleged That Any AI Model Is an Infringing**

12   **Derivative Work.**

13        Plaintiffs also assert—in a single sentence, in the "Overview" of their Complaint—a

14   theory that the Imagen model itself constitutes an infringing derivative work. Compl. ¶ 6; *see*

15   *also id.* ¶ 52. According to Plaintiffs, "[b]ecause Imagen contains weights that represent a

16   transformation of the protected expression in the training dataset, Imagen is itself an infringing

17   derivative work." *Id.* ¶ 6. That is wrong as a matter of law. As Judge Chhabria recently held,

18   allegations that a generative AI model is, itself, an infringing copy or derivative of the works on

19   which it was trained do not suffice to state an infringement claim. *See Kadrey v. Meta Platforms,*

20   *Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023). In *Kadrey*, the plaintiffs asserted that

21   AI models were "infringing derivative works" because they "cannot function without the

22   expressive information extracted from Plaintiffs' Infringed Works and retained inside" the

23   models. No. 3:23-cv-03417-VC, ECF No. 1 ¶ 41 (July 7, 2023). The court dismissed the claim,

24   holding that the theory was not only "not viable"—it was "nonsensical." *Kadrey*, 2023 WL

25   8039640, at *1. Reasoning that "[a] derivative work is 'a work based upon one or more

26   preexisting works' in any 'form in which a work may be recast, transformed, or adapted,'" the

27   court concluded that that "[t]here is no way to understand the LLaMA models themselves as a

28   recasting or adaptation" of the plaintiffs' works. *Id.* (quoting 17 U.S.C. § 101).

1    So too here. As the Ninth Circuit has explained, it would be "frivolous" to contend that
2    "any work based on a copyrighted work" is an infringing derivative. *Litchfield v. Spielberg*, 736
3    F.2d 1352, 1357 (9th Cir. 1984). Rather, the "derivative works over which the author of the
4    original enjoys exclusive rights ordinarily are those that re-present the protected aspects of the
5    original work, *i.e.*, its expressive content." *Authors Guild*, 804 F.3d at 225. Thus, to state a claim,
6    a plaintiff must allege substantial similarity between the protected aspects of the original work
7    and the alleged derivative. *See Litchfield*, 736 F.2d at 1357; *see also Rentmeester*, 883 F.3d at
8    1117 ("[T]he similarities between the two works must be 'substantial' and they must involve
9    protected elements of the plaintiff's work.").

10    Here, however, Plaintiffs make no allegation that the model "allow[s] access in any
11    substantial way" to the images' "expressive content." *Authors Guild*, 804 F.3d at 226 (holding
12    that Google Books' search functionality, which displayed "snippets" of books, did not infringe
13    authors' derivative rights). Without any allegation that the model is substantially similar to any
14    protected expression, Plaintiffs' claim is not plausible and should be dismissed. *See Synopsys,*
15    *Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013); *see also Perry v.*
16    *Mary Ann Liebert, Inc.*, 2018 WL 2561029, at *5 (S.D.N.Y. June 4, 2018) ("'[T]he failure to
17    plead facts regarding how the [works] are 'substantially similar,' including identifying the
18    protectable elements of the works as parts of its claim, will result in dismissal of the copyright
19    claim.'" (quoting *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 442 (S.D.N.Y. 2012)).

20    **IV.    The Complaint Fails to State a Claim for Vicarious Copyright Infringement Against**
21           **Alphabet.**

22    Plaintiffs' vicarious copyright infringement claim fails because it rests on nothing more
23    than boilerplate allegations and the bare fact Alphabet is the corporate parent of Google. To state
24    a claim for vicarious infringement, "a plaintiff must allege that the defendant has (1) the right
25    and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing
26    activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

27    Plaintiffs do not even attempt to allege any facts that meet these pleading requirements.
28    *See* Compl. ¶¶ 57–61. Instead, they summarily assert that "[a]s the corporate parent of Google,

1    Alphabet had the right and ability to supervise the infringing activity of Google" and "benefitted

2    [sic] financially from the infringing activity of Google." Compl. ¶¶ 59–60; *see also id.* ¶ 19

3    (conclusory allegations that "the Defendants in this Complaint" acted as each other's "agents"

4    and "as a single unified entity"). That is, Plaintiffs offer precisely the kind of "formulaic

5    recitation of the elements of a cause of action [that] will not do." *Ashcroft v. Iqbal*, 556 U.S. 662,

6    678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); s*ee, e.g.*, *Nat'l Photo*

7    *Grp., LLC v. Allvoices, Inc.*, 2014 WL 280391, at *8 (N.D. Cal. Jan. 24, 2014) (dismissing

8    vicarious infringement claim where plaintiff "simply parrot[ed] the elements of the claim without

9    providing any factual allegations that would make such a claim plausible"); *Netbula, LLC v.*

10   *Chordiant Software, Inc.*, 2009 WL 750201, at *2–4 (N.D. Cal. Mar. 20, 2009) (same, where

11   "conclusory" allegations did not satisfy either prong); *Payne v. Manilow*, 2019 WL 4143308, at

12   *5 (C.D. Cal. Apr. 2, 2019) (same, where plaintiff "relie[d] on conclusory statements and fail[ed]

13   to present any factual allegations to support his cause of action").

14          Stripped of its conclusory allegations, Plaintiffs' claim for vicarious liability boils down

15   to the premise that parent corporations are always liable for the infringing conduct of their

16   subsidiaries—a premise contrary to black-letter corporate and copyright law. "Generally, it is a

17   'principle of corporate law deeply ingrained in our economic and legal systems that a parent

18   corporation … is not liable for the acts of its subsidiaries.'" *Williby v. Hearst Corp.*, 2017 WL

19   1210036, at *4 (N.D. Cal. Mar. 31, 2017) (Davila, J.) (quoting *United States v. Bestfoods*, 524

20   U.S. 51, 61 (1998)). Consistent with this black-letter principle, courts have generally held that

21   "[a] parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious

22   liability against a parent for the actions of its subsidiary." *Mayimba Music, Inc. v. Sony Corp. of*

23   *Am.*, 2014 WL 5334698, at *13 (S.D.N.Y. Aug. 19, 2014); *see also Hartmann v. Amazon.com,*

24   *Inc.*, 2021 WL 3683510, at *9 (S.D.N.Y. Aug. 19, 2021) (collecting cases). This is equally true

25   in the context of vicarious copyright infringement liability, which requires "show[ing] more than

26   just a legal relationship between the parent and the subsidiary or that the parent benefits from its

27   ownership of the subsidiary." *Broadvision Inc. v. Gen. Elec. Co.*, 2009 WL 1392059, at *4

28   (S.D.N.Y. May 5, 2009). Thus, in *Hartmann v. Google LLC*, 2022 WL 684137, at *8 (S.D.N.Y.

1  Mar. 8, 2022), the court dismissed a vicarious copyright infringement claim against Google

2  based on allegedly infringing conduct by its subsidiary YouTube, because "Google's ownership

3  of YouTube does not alone suffice" to state a claim.

4       Courts have similarly and routinely dismissed claims against Alphabet premised solely

5  on the conduct of its corporate subsidiaries. For example, in *Lancaster v. Alphabet Inc.*, 2016

6  WL 3648608, at *7 (N.D. Cal. July 8, 2016), the court dismissed copyright infringement and

7  other claims against Alphabet where all of the allegedly infringing and unlawful conduct was

8  exclusively attributed to Alphabet's subsidiaries, Google and YouTube, LLC, the "Plaintiff d[id]

9  not make any specific allegations against Alphabet," and the complaint therefore "provide[d] no

10 reason for the Court to depart from the 'deeply ingrained' principle" that Alphabet "is not liable

11 for the wrongs of its subsidiaries." Other courts have likewise recognized that "allegation[s] that

12 Alphabet's *subsidiaries* have engaged in wrongdoing [are] simply inadequate to state a

13 cognizable claim against Alphabet." *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at

14 *2 (D.S.C. Mar. 31, 2019); *accord Kremer v. Alphabet Inc.*, 2024 WL 923900, at *5 (M.D. Tenn.

15 Mar. 4, 2024) (dismissing claims against Alphabet, where the allegations about "'[t]he

16 Defendant's' wrongful conduct relate[d] to Google, not Alphabet.").

17      Alphabet's ownership of Google does not alone suffice to state a vicarious liability claim.

18 And Plaintiffs allege nothing else. Plaintiffs' claim for vicarious copyright infringement against

19 Alphabet should be dismissed.

20                             **<u>CONCLUSION</u>**

21      For these reasons, Defendants respectfully request dismissal of Plaintiffs' copyright

22 infringement claims as to works not named in the Complaint; all copyright infringement claims

23 asserted by Plaintiff Sarah Andersen and all copyright infringement claims asserted by Plaintiff

24 Hope Larson based on "Chiggers" for failure to allege valid registration; Plaintiffs' copyright

25 infringement claim based on the theory that Defendants' AI models are an infringing derivative

26 work, and the vicarious infringement claim against Alphabet in its entirety.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  June 20, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   */s/ David H. Kramer*
      David H. Kramer
      dkramer@wsgr.com
      Maura L. Rees
      mrees@wsgr.com
      Eric P. Tuttle
      eric.tuttle@wsgr.com

*Counsel for Defendants*
GOOGLE LLC and ALPHABET INC.