Joseph R. Saveri (State Bar No. 130064)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
Email:        jsaveri@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323) 968-2632
Facsimile:  (415) 395-9940
Email:        mb@butcoricklaw.com

Laura M. Matson *(pro hac vice)*
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:    (612) 339-0981
Email:          lmmatson@locklaw.com

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Jingna Zhang, et al.,<br><br>        *Individual and Representative Plaintiffs*,<br><br>        v.<br><br>Google LLC, a Delaware limited liability company; and Alphabet Inc., a Delaware corporation;<br><br>                        *Defendants*. | Case No. 5:24-cv-02531-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br><u>Hearing Information</u><br>Date: October 17, 2024<br>Time: 9:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Edward J. Davila |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................1

III.    ARGUMENT .........................................................................................................2

        A.    Plaintiffs Sufficiently Allege Infringement of Their Copyrighted Works..............2

        B.    Plaintiffs Sarah Andersen and Hope Larson Adequately Allege Registration of
              Their Infringed Images.................................................................................6

              1.    Plaintiff Sarah Andersen ...........................................................................6

              2.    Plaintiff Hope Larson ...............................................................................10

        C.    Plaintiffs Adequately Allege that the Google-LAION Models Are Infringing
              Derivative Works. ......................................................................................11

        D.    Plaintiffs State a Viable Claim for Vicarious Copyright Infringement. ...............12

              1.    Alphabet Exercises Control Over Google..................................................13

              2.    Alphabet Derives a Direct Financial Benefit from Google's Infringing
                    Activity.............................................................................................14

IV.     CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Software Speedy*, No. C-14-2152 EMC, 2014 WL 7186682
(N.D. Cal. Dec. 16, 2014) ........................................................................ 5

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,* 747 F.3d 673 (9th Cir.
2014) ................................................................................................. 7, 8

*Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435 (D. Del. 2018) ........................................ 15

*Andersen v. Stability AI Ltd.,* __ F. Supp. 3d __, 2023 WL 7132064
(N.D. Cal. Oct. 30, 2023) ............................................................... *passim*

*Andersen  v. Stability AI Ltd.*, No. 3:23-cv-201 (N.D. Cal.), ECF No. 193 ................................. 12

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007
(N.D. Cal. 2016) ................................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 2, 12, 13

*Cook v. Meta Platforms Inc.*, No. 4:22-CV-02485-YGR, 2023 WL 6370891
(N.D. Cal. Jan. 4, 2023) ........................................................................ 14

*DBW Partners, LLC v. Bloomberg, L.P.*, No. 19-311(RBW), 2019 WL 5892489
(D.D.C. Nov. 12, 2019) ........................................................................ 6

*dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-67-MR (W.D.N.C.), ECF No. 272-1 ........... 9

*Dolman v. Agee*, 157 F.3d 708 (9th Cir. 1998) ............................................................... 9

*Einhorn v. Megatroyd Prods.*, 426 F. Supp. 2d 189 (S.D.N.Y. 2006) ........................................ 8, 9

*Facebook, Inc. v. Power Ventures, Inc.*, No. C-08-5780 JF (RS), 2009 WL 1299698
(N.D. Cal. May 11, 2009) ...................................................................... 3

*Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94 (S.D.N.Y. 2020) ...................................... 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir.1996) ................................ 13, 14

*Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC, 2022 WL 1599868
(C.D. Cal. Jan. 28, 2022) ...................................................................... 13

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
No. LA CV16-00339 JAK (FFMx), 2017 WL 3477746 (C.D. Cal. May 12, 2017) ............... 5

*Howard Johnson Co., v. Khimani*, 892 F.2d 1512 (11th Cir. 1990) ........................................ 13

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................. 2

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038 (9th Cir. 2014)............................................ 7

*Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932 (N.D. Cal. 2019) ...................... 13, 14

*Kremer v. Alphabet Inc.*, No. 2:23-cv-52, 2024 WL 923900 (M.D. Tenn. Mar. 4, 2024) .......... 15

*Lambertini v. Fain*, No. 12-cv-3964 (DRH) (ARL), 2014 WL 4659266
    (E.D.N.Y. Sept. 17, 2014)........................................................................................ 6

*Lancaster v. Alphabet, Inc.,* No. 15-cv-5299-HSG, 2016 WL 3648608
    (N.D. Cal. July 8, 2016) ........................................................................................ 15

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646
    (D.S.C. Mar. 31, 2019)........................................................................................... 15

*Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015) ........................... 8

*McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481(JSR), 2010 WL 4615772
    (S.D.N.Y. Nov. 9, 2010) ......................................................................................... 8

*McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020)................................. 2

*Microsoft Corp. v. My Choice Software, LLC*, No. SA CV 16-2187-DOC,
    2017 WL 5643210 (C.D. Cal. Oct. 10, 2017)....................................................... 3, 6

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. C-13-3627 JSC, 2014 WL 280391
    (N.D. Cal. Jan. 24, 2014) ....................................................................................... 15

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ........................................................................... 2

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-11181-CAS-JPR (C.D. Cal.),
    ECF No. 85 .............................................................................................................. 9

*Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-19 JW, 2009 WL 750201
    (N.D. Cal. Mar. 20, 2009)...................................................................................... 15

*PalatiumCare, Inc. v. Notify LLC & Lucas Narbatovics*, No. 2:22-cv-217-JPS (E.D.
    Wis.), ECF No. 101 ................................................................................................ 9

*Payne v. Manilow*, No. CV 18-3413 PSG, 2019 WL 4143308 (C.D. Cal. Apr. 2, 2019) ........... 14

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ........................................ 13

*Perfect 10, Inc. v. Cybernet Ventures*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ....................... 3, 4

*Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657 (9th Cir. 2017)................................................. 5

*Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314 (D. Mass. 1994)............... 12

*Premier Tracks, LLC v. Fox Broad. Co.*, No. 12-cv-01615 DMG, 2012 WL 13012714
    (C.D. Cal. Dec. 18, 2012) ....................................................................................... 5

*Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010) ..................................................... 6

*Routt v. Amazon.com, Inc.*, 584 Fed. App'x 713 (9th Cir. 2014) ................................. 13

*Tangle Inc. v. Aritzia, Inc.*, No. 23-cv-1196-JSW, __ F. Supp. 3d __, 2023 WL 6883369
    (N.D. Cal. Oct. 18, 2023) .......................................................................................... 3

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) .................... 7, 8

*Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176 (E.D.N.Y. 2018) ......................... 6

**Statutes**

17 U.S.C. § 101 .................................................................................................... 7, 8, 11

17 U.S.C. § 407 ...................................................................................................... 10, 11

17 U.S.C. § 409 .................................................................................................. 7, 8, 10

17 U.S.C. § 411 ............................................................................................................ 6

**Federal Court Rules**

Fed. R. Civ. P. 8 ...................................................................................................... 2, 4

Fed. R. Civ. P. 9 ......................................................................................................... 13

Fed. R. Civ. P. 12 ...................................................................................................... 2, 5

Fed. R. Civ. P. 56 ......................................................................................................... 5

**Regulations**

37 C.F.R. § 202.3(b)(4) (2022) ................................................................................... 10

37 C.F.R. § 202.20(b)(2)(ii) (1986) ............................................................................ 10

**Other Authorities**

5 Patry on Copyright § 17.125 (2024) ........................................................................ 11

Bernard C. Dietz, *Copyright Registration Practice* § 17:9.50 (2d ed. 2024) .............. 10

Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.16[B][5][c] ......... 8

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 101 (3d ed.
    2021) ..................................................................................................................... 9, 11

## I.     INTRODUCTION

Plaintiffs' Complaint (ECF No. 1) alleges with requisite specificity how Google and its corporate parent, Alphabet (collectively, "Google" or "Defendants"), directly copied Plaintiffs' and others' copyrighted images to train Defendants' AI image products for their own commercial profit. In their rush to create their commercial AI image products, Defendants used the LAION-400M dataset, a collection of approximately 400 million images, to train their AI models. The LAION-400M dataset includes numerous images with registered copyrights, including those of the Plaintiffs, all taken without consent and without any credit or compensation to the copyright holders. By using the LAION-400M dataset to train their models, Defendants committed copyright infringement on a massive scale with cavalier disregard for the rights of the people who created the images that now serve as fuel for their commercial AI products.

This case is moving forward—Defendants concede that Plaintiffs have made out a claim for direct infringement sufficient to pass the pleading stage. But Defendants attack other issues at the margins. Indeed, many of the arguments Defendants levy here—for example, Defendants' quibbles with Plaintiffs' registrations—have already been raised and rejected in this district. *See, e.g.*, *Andersen v. Stability AI*, No. 3:23-cv-201-WHO (N.D. Cal.). None of Defendants' arguments challenging Plaintiffs' registrations or Plaintiffs' allegations that Defendants' models are infringing derivative works are new. To the extent Defendants challenge Plaintiffs' vicarious infringement claim on the basis of corporate formality, this argument too fails. Unlike the cases upon which Defendants rely, Plaintiffs' Complaint is replete with allegations reflecting Alphabet's control and financial benefit. This satisfies Plaintiffs' pleading burden and Defendants' motion should be denied.

## II.     FACTUAL BACKGROUND

Google created, maintains, and sells Imagen, an artificial intelligence ("AI") software product. ¶ 2.[1] Imagen is a text-to-image diffusion model, which converts a text prompt (i.e., a short description of an image) into a corresponding image using a machine-learning technique called diffusion. ¶¶ 2, 22.

---

[1] "¶ __" and "Ex. __" citations are to Plaintiffs' Complaint (ECF No. 1) unless otherwise indicated.

Google used the LAION-400M dataset, a collection of approximately 400 million images, to train Imagen. ¶¶ 23, 24, 37. LAION-400M encompasses images with registered copyrights, including those registered to Plaintiffs. ¶ 25. To train a model on the LAION-400M dataset, each of the images referenced therein must be downloaded from the internet because the dataset itself contains only URLs and metadata for the images—not the actual images themselves. ¶¶ 40, 41, 54. Therefore, to train Imagen, Google necessarily downloaded actual copies of hundreds of millions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 41, 42, 54. Plaintiffs never authorized Google to copy their copyrighted work ("Works") for that or any other purpose. ¶ 52.

On information and belief, Google also used LAION-400M to train Google's successor to Imagen, called Imagen 2, as well as Google's "multimodal" models, such as Google Gemini. ¶¶ 31–33, 53. Plaintiffs refer to Imagen and other models trained on the LAION-400M dataset as "Google-LAION Models." ¶ 53. As the corporate parent of Google, Alphabet benefitted financially from Google's infringing activity when it trained the Google-LAION Models on Plaintiffs' Works, and continues to benefit financially from the deployment of the Google-LAION Models. ¶ 59.

### III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The plaintiff's allegations need only provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted). In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### A.   Plaintiffs Sufficiently Allege Infringement of Their Copyrighted Works.

To adequately state a copyright infringement claim, Plaintiffs must allege that they (1) "own[] a valid copyright, and (2) Defendants copied protected aspects of the copyrighted work's expression."

*Tangle Inc. v. Aritzia, Inc.*, No. 23-cv-1196-JSW, __ F. Supp. 3d __, 2023 WL 6883369, at *2 (N.D. Cal. Oct. 18, 2023). "Copyright claims need not be pled with particularity" and "complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules." *Perfect 10, Inc. v. Cybernet Ventures*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001); *see also Facebook, Inc. v. Power Ventures, Inc.*, No. C-08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) ("There is no requirement that copyright claims must be pled with particularity.").

Plaintiffs have more than satisfied the pleading requirements for their copyright infringement claims. They allege that they "own registered copyrights in certain training images that Google has admitted copying to train Imagen." ¶ 5. Exhibit A to the Complaint contains a list of copyrights registered by each Plaintiff and Exhibit B shows that these copyrighted images were included as part of the LAION-400M Dataset. ¶¶ 15–16. Further, Plaintiffs allege that all of the Works listed in Exhibit A as copyrighted "were scraped into the LAION-400M dataset." ¶ 16. The Complaint also alleges that "[i]n May 2022 . . . Google admit[ted] that it trained Imagen on 'the publicly available Laion [sic] dataset . . . with ~400M image-text pairs.'" ¶ 23. "This level of detail gives Defendants fair notice of the claims against them." *Microsoft Corp. v. My Choice Software, LLC*, No. SA CV 16-2187-DOC (KESx), 2017 WL 5643210, at *3 (C.D. Cal. Oct. 10, 2017) (finding claim of copyright infringement adequate where plaintiff alleged "present ownership, registration in compliance with the applicable statute, and infringement by Defendants"); *see also Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1022 (N.D. Cal. 2016) (finding fair notice of copyright infringement where plaintiff provided a list of nine copyright registrations and alleged that defendant had "copied and reproduced its products without permission," because it was "likely that discovery will crystallize the extent of Plaintiff's infringement allegations").

Defendants have conceded that Plaintiffs' direct infringement claim may proceed past the pleading stage. Nonetheless, Defendants challenge the adequacy of Plaintiffs' allegations in hopes of narrowing the scope of Plaintiffs' claims. Specifically, Defendants assert that Plaintiffs must allege every single infringing Work at issue in their Complaint and that failure to do so limits the Works at issue to those specifically identified. MTD at 6–8. But the law does not pose so stringent a pleading

requirement in cases involving widespread infringement. For example, in a case involving "hundreds, even thousands of infringing photographs," a court explained that "[r]equiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8." *Cybernet Ventures*, 167 F. Supp. 2d at 1120; *see also id.* ("Copyright claims need not be pled with particularity . . . complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules."). The infringement at issue here involves hundreds of millions of images, ¶¶ 23, 37, and Plaintiffs bring this action on behalf of a class containing "at least thousands of members," ¶ 65, whose Works comprise part of the training dataset copied and ingested by Defendants' AI models, ¶¶ 4, 15, 16, 25, 41. The specificity that Defendants would require is simply "incompatible with the types of claims involved in this case." *Cybernet Ventures, Inc.*, 167 F. Supp. 2d at 1120. Defendants' call for heightened specificity is entirely unsupported.

*Sarah Andersen, et al. v. Stability AI Ltd., et al.*, No. 3:23-201 (N.D. Cal.) ("*Stability AI*"), a case in this district challenging similar AI image generator products under similar theories, is instructive. There, the first *Stability AI* complaint alleged that Plaintiff Andersen "created and owns a copyright interest in over two hundred Works included in the Training Data" and "relie[d] on the output of a search of her name on the 'ihavebeentrained.com' [sic] site to support the plausibility and reasonableness of her belief that her works were, in fact, used in the LAION datasets and training for [the AI model at issue]." __ F. Supp. 3d __, 2023 WL 7132064, at *4 (N.D. Cal. Oct. 30, 2023). Defendants, however, argued that Plaintiff Andersen's copyright claim could not proceed because Plaintiff Andersen did not identify with specificity each work she believed was used as a training image. *Id.* Judge Orrick rejected the argument and denied the motion to dismiss her infringement claims, explaining that "particularly in light of the nature of this case, *i.e.*, that LAION scraped five billion images to create the Training Image datasets," the fact that Andersen was able to find her copyrighted works on the "Have I Been Trained?" website led to the plausible inference "that *all* of Anders[e]n's works that were registered as collections *and* were online were scraped into the training datasets." *Id.* (emphases in original, alteration added).

4

The allegations here are no different—Plaintiffs not only allege that they searched for their names and found their copyrighted works on the "Have I Been Trained?" website, but also include in Exhibit B a representative sample of the copyrighted works that appear in the LAION-400M dataset. ¶ 16. Thus, like in *Stability AI*, the plausible inference is that all of Plaintiffs' works that were available online were scraped and used for training Defendants' AI image products.

Defendants point to cherry-picked dicta from inapposite cases in a misguided attempt to limit Plaintiffs' direct infringement claim. For example, Defendants pluck dictum from the Ninth Circuit's opinion in *Perfect 10, Inc. v. Giganews, Inc.*, in which the court, analyzing the financial benefit element of a vicarious infringement claim, referenced the district court's characterization of the complaint as "a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted images." 847 F.3d 657, 673 (9th Cir. 2017). But a cursory read of *Giganews* reveals the Ninth Circuit did not proclaim a heightened standard for pleading copyright infringement claim, as Google suggests. Indeed, *Giganews* was on appeal from a grant of summary judgment under Rule 56, not dismissal under Rule 12. *Id.* at 665.[2]

Defendants' other cases fare no better. Each is either inapposite[3] and/or an out-of-circuit

---

[2] Defendants cite other cases with inapplicable postures such as class certification. *See* MTD at 6 (quoting *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023)). These cases can be similarly discarded.

[3] *Premier Tracks, LLC v. Fox Broad. Co.*, No. 12-cv-01615 DMG (PJWx), 2012 WL 13012714, at *8 (C.D. Cal. Dec. 18, 2012) (plaintiffs did not indicate "who actually claims the copyrights or who owns the relevant section 106 exclusive rights" and, therefore, "fail[ed] to allege enough facts for the Court to plausibly infer ownership); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339 JAK (FFMx), 2017 WL 3477746, at *7-8 (C.D. Cal. May 12, 2017) (order on motions for summary judgment where plaintiff attempted to use a copyright registration as a basis for its claim for the first time only after the previously pleaded registration was invalidated); *Adobe Sys. Inc. v. Software Speedy*, No. C-14-2152 EMC, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014) (analyzing a motion under Rule 12(e), not Rule 12(b)(6)).

opinion,[4] and each is` distinguishable from the facts and posture in this case. None of the cases Defendants cite countermand the standard that in "cases involving online forums[,] . . . alleging some but not all instances of infringement is sufficient to state a claim." *My Choice Software*, 2017 WL 5643210, at *3.

**B.      Plaintiffs Sarah Andersen and Hope Larson Adequately Allege Registration of Their Infringed Images.**

A plaintiff must register or preregister a copyright claim with the Copyright Office prior to bringing a civil action for infringement. 17 U.S.C. § 411(a). Although not a jurisdictional requirement, registration is a "precondition" for an infringement claim. *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 166 (2010). Here, Plaintiffs have identified specific Works within the LAION-400M dataset for which they hold copyright registrations —Works that Google copied to train the Google-LAION Models. *See, e.g.*, Ex. A (Plaintiffs' registered Works included in the LAION-400M dataset). Nonetheless, Defendants argue that the registrations submitted by two Plaintiffs, Sarah Andersen and Hope Larson, are invalid. MTD at 14–18.[5] Defendants' arguments hold no water.

**1.      Plaintiff Sarah Andersen**

Defendants contend that Plaintiff Andersen's copyright registrations are invalid because they are for "compilations" that purportedly include "previously-published (and thus unclaimable) material." MTD at 15–16. That argument misconstrues the law. It is well-settled that when a copyright holder

---

[4] *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 201 n.12 (E.D.N.Y. 2018) (plaintiff conceded it had not filed applications for registration of any other work except "the Work" at issue and only "suspect[ed] that Defendants copied additional [other works]."); *Lambertini v. Fain*, No. 12-cv-3964 (DRH) (ARL), 2014 WL 4659266, at *3 (E.D.N.Y. Sept. 17, 2014) (plaintiff made only "general, non-specific allegations" and failed to allege whether the copyrighted works were the subject of infringement); *DBW Partners, LLC v. Bloomberg, L.P.*, No. 19-311(RBW), 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (plaintiff merely alleged that the defendant had "infringed [the plaintiff's] copyright in its proprietary reports" without providing any specific examples).

[5] Defendants do not challenge the registrations of Plaintiffs Zhang and Fink.

owns both the collective work as well as the underlying elements, the registration of the former permits an infringement action on the underlying parts. *See, e.g.*, *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 989 (9th Cir. 2017) ("An applicant does not need to list the names of the component works in a collection to register them as long as it holds the rights to the component works.").[6]

A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Section 409 of the Copyright Act provides that an application for registration of a compilation "shall be made on a form prescribed by the Register of Copyrights and shall include," as relevant here, the name of the author or authors, the title of the work, and "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409. Courts interpreting Section 409 look to guidance from the Copyright Office. *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014).

In *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Company*, the Ninth Circuit addressed whether the registered copyright of a collection covered the individual images contained therein. 747 F.3d 673, 676–77 (9th Cir. 2014). The court considered a declaration from the Associate Register for Registration and Recordation of the United States Copyright Office, which stated, "[s]ince 1980, the Copyright Office has permitted, as a matter of practice, copyright registrations of collective works to cover underlying contributions where the rights in those contributions belong to the claimant even though the individual contributors are not named in the registration form." *Id.* at 679–80. Accordingly, the Ninth Circuit held that the plaintiff "successfully registered the copyright both to its collections and to the individual images contained therein" because "[t]he statute required identification of the author and title of the 'work,' which was the collective work, and extended registration to the

---

[6] Indeed, this argument is merely a rehash of an argument the *Stability AI* defendants made, and which was squarely rejected. *See Stability AI*, 2023 WL 7132064, at *4 (rejecting argument that plaintiff "should be required to identify which specific works from which her registered collections she believes were copied into the LAION datasets").

component parts if the party registering the collective work owned the copyright to the component parts, as [the plaintiff] did." 747 F.3d at 685; *see also Unicolors*, 853 F.3d at 989 (affirming *Alaska Stock*). *Nimmer on Copyright*, a leading treatise on copyright law, is in accord, explaining that if the copyright owner of the collective work is not merely a licensee, but also the copyright owner of the components—as Plaintiffs are here—registration of the collective work registers the components. Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.16[B][5][c].

Defendants do not refute this well-settled law. They also do not dispute that Plaintiff Andersen owns the copyrights in the underlying elements of the compilations or the validity of the copyright registrations for each compilation. The inquiry therefore ends there—Plaintiff Andersen has valid registered copyrights in compilations of Works which extend to each copyrightable element of those collections. *See Stability AI*, 2023 WL 7132064, at \*4; *Alaska Stock*, 747 F.3d at 685; *Unicolors*, 853 F.3d at 989; 2 *Nimmer on Copyright* § 7.16[B][5][c].

Rather than refute the law, Defendants claim that Plaintiff Andersen published certain images at issue before registering them by posting them on X, f/k/a Twitter. MTD at 16–17. But Defendants have not met their burden to show that Plaintiff Andersen's internet posts constituted "publication" under the Copyright Act. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 990 (C.D. Cal. 2015) (party claiming "publication" has burden of proof). Pursuant to the statute, "publication" is the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . . A public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101. Indeed, courts routinely hold that merely posting a work on the internet *does not* constitute "publication" for copyright purposes. *See, e.g.*, *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 99 (S.D.N.Y. 2020) (photograph posted on website not "published" because "publication entails more than mere display, and Defendant makes no effort to traverse the legal gap between these concepts"); *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481(JSR), 2010 WL 4615772, at \*4 (S.D.N.Y. Nov. 9, 2010) (plaintiff's "claim that images composing the Collection were posted on her website would not in any event suffice to plead 'publication'."); *Einhorn v. Megatroyd Prods.*, 426 F. Supp. 2d 189, 196 n.45 (S.D.N.Y. 2006) ("merely posting a digital file" on the internet does not amount to "publication" under the Copyright Act). As the *Einhorn* court explained:

[The statutory definition of "publication"] dooms [plaintiff's] claim that the posting of performances of the [play] on the Internet constituted publication . . . . Making the work available in that way, even assuming it constituted "distribution," did not involve "sale or other transfer of ownership, or by rental, lease or lending." Indeed, this result follows directly from the principle that "the projection or exhibition of a motion picture in theaters or elsewhere does not in itself constitute a publication."

*Einhorn*, 426 F. Supp. 2d at 196 & n.45 (citing 1 *Nimmer on Copyright* § 4.11[A]); *see also Dolman v. Agee*, 157 F.3d 708, 713 (9th Cir. 1998) ("[M]ere performance or exhibition of a work does not constitute a publication of that work[.]"). Further, the Compendium of U.S. Copyright Office Practices ("Compendium") states, "the mere fact that a work is disclosed on the Internet does not 'publish' the work" and that "it is not always factually clear whether the placement of works online is intended to be an authorized distribution of those works" so as to constitute publication. Compendium § 1008.3(C) (3d ed. 2021).[7] The weight of authority does not favor Defendants.

As a final gambit, Defendants cite judicial filings from the Register of Copyrights in three out-of-circuit cases to support their argument that registration of a compilation does not cover preexisting material, but none of those cases involved plaintiffs who owned copyrights to the underlying components of the compilations at issue, as Plaintiffs do here. These filings are therefore inapplicable. *See PalatiumCare, Inc. v. Notify LLC & Lucas Narbatovics*, No. 2:22-cv-217-JPS (E.D. Wis.), ECF No. 101 (addressing whether failure to name authors of plaintiff company's source code would have caused Register to refuse registration); *Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-11181-CAS-JPR (C.D. Cal.), ECF No. 85 (addressing whether Register would have refused registration if it had known that plaintiff company "was not the sole author of all of the works included in the group application"); *dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-67-MR (W.D.N.C.), ECF No. 272-1 (addressing whether Register would have refused registration of computer software program authored by a third party if it had known that "the application provided incorrect dates of first publication and/or completion, or that the deposit included material created or published after the dates provided on the application").

---

[7] Available at https://www.copyright.gov/comp3/docs/compendium.pdf.

The Court should reject Defendants' arguments that Plaintiff Andersen's copyright registrations are invalid.

### 2.      Plaintiff Hope Larson

Defendants seize on a ministerial error and argue that because the Library of Congress's deposit copy of Plaintiff Hope Larson's book, "Chiggers," does not include "training image 2," any claim based on that image must be dismissed for lack of pre-suit registration.[8] MTD at 18. But it is clear that a book and its dust jacket constitute a single unit of publication, and thus all protectable elements therein are protected. *See* 37 C.F.R. § 202.3(b)(4) (2022) (explaining that "[i]n the case of published works, *all* copyrightable elements that are otherwise recognizable as self-contained works, that are included in the same unit of publication, and in which the copyright claimant is the same" are considered one work). Given the law governing deposit copies and the Copyright Office's own policies, it is unclear why the Library of Congress apparently failed to include "training image 2," the jacket cover for "Chiggers," as part of the book's deposit copy. But that fact does not invalidate Ms. Larson's copyright registration in the image.

The Copyright Act requires an owner of a copyright to deposit "complete copies" of the best edition of the work within a certain period of time. 17 U.S.C. § 407(a). This mandate is clear and unambiguous and requires the "complete copy" of the work. Indeed, the Code of Federal Regulations itself specifies that "a 'complete' copy . . . of a published work includes *all elements comprising the applicable unit of publication of the work*, including elements that, if considered separately, would not be copyrightable subject matter." 37 C.F.R. § 202.20(b)(2)(ii) (1986) (Deposit of copies and phonorecords for copyright registration) (emphasis added). This includes dust jackets, which are a copyrightable element. *See* Bernard C. Dietz, *Copyright Registration Practice* § 17:9.50 (2d ed. 2024) (Unit of Publication) ("It is possible to register as a single 'unit of publication' a number of works that were packaged or physically bundled together and first published as a single integrated unit on the same date. A registration issued under this option covers each work in the unit that is owned by the copyright claimant. Representative examples of a copyrightable 'unit of publication' might include . . .

---

[8] Defendants do not challenge Plaintiff Larson's other registered work, "All Summer Long."

*A bound volume published with a dust jacket.*" (emphasis added)). Moreover, the Copyright Office's own policy states that "[a] book and a book jacket may be registered with the same application if the works can be physically separated from each other, and if the copyright in both works is owned by the same claimant." Compendium § 713.

It is plain from the statutory text that the dust jacket for "Chiggers," as part of the unit of publication, should have been included as part of the "complete copy" submitted pursuant to 17 U.S.C. § 407. Defendants do not dispute that the dust jacket for "Chiggers" and the book constitute a single unit of publication. Nor do Defendants maintain that Plaintiff Larson failed to submit "Chiggers" together with its dust jacket. Thus, the "Chiggers" jacket cover, which Plaintiff Larson created specifically for "Chiggers" and submitted to the Copyright Office for registration with "Chiggers," is covered by the "Chiggers" registration. *See* 17 U.S.C. § 407(a) (deposit requirement *not* a condition of copyright protection). Although the Library of Congress should have included the jacket cover as part of the deposit copy under the plain language of the statute (*see* 17 U.S.C. § 407(a)), that error, whether intentional or inadvertent, does not require the Court to invalidate Ms. Larson's registered copyright. *See* 5 Patry on Copyright § 17.125 (2024) ("[M]ost courts hold that inadvertent material mistakes do not bar an infringement action 'unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement.'").

**C.   Plaintiffs Adequately Allege that the Google-LAION Models Are Infringing Derivative Works.**

Defendants assert that, "as a matter of law," Imagen is not an infringing derivative work. MTD at 18. Defendants' certainty is misplaced. Under the Copyright Act, a derivative work is "a work based upon one or more preexisting works, such as . . . [an] abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Plaintiffs allege that "[b]ecause Imagen contains weights that represent a transformation of the protected expression in the training dataset, Imagen is itself an infringing derivative work." ¶ 6. When recently confronted with a similar argument in *Stability AI*, Judge Orrick tentatively ruled that the plaintiffs—many of whom are Plaintiffs in this action—should be permitted to proceed with discovery on their claims that the AI text-to-image diffusion model in that case is an infringing work:

1
2
3
4
5
6

> I am inclined to DENY all motions to dismiss the direct and induced infringement
> claims under the Copyright Act. Beyond the Training Images theory . . . plaintiffs
> have plausibly alleged facts to suggest compressed copies, or effective
> compressed copies albeit stored as mathematical information, of their works are
> contained in the versions of [the text-to-image diffusion model] identified. At this
> juncture, plaintiffs should be allowed to proceed with discovery. The facts
> regarding how the diffusion models operate, or are operated by the defendants,
> should be tested at summary judgment against various direct and induced
> infringement theories and precedent under the Copyright Act.

7

*Sarah Andersen, et al. v. Stability AI Ltd., et al.*, No. 3:23-cv-201 (N.D. Cal.), ECF No. 193.[9]

8
9
10
11
12

Thus, whether an AI text-to-image diffusion model is an infringing derivative work is not, as Defendants suggest, settled law. Given the cutting-edge nature of the technology and the many unresolved factual questions regarding the Google-LAION Models' training and deployment, the prudent course is to allow Plaintiffs to develop their infringement claims in discovery, just as Judge Orrick suggested he would do in *Stability AI*.

13

**D.      Plaintiffs State a Viable Claim for Vicarious Copyright Infringement.**

14
15
16
17
18
19
20
21

Defendants misrepresent Plaintiffs' vicarious infringement claims as reliant solely on the parent-subsidiary relationship between Alphabet and Google. MTD at 19 ("Plaintiffs' vicarious copyright claim fails because it rests on nothing more than boilerplate allegations and the bare fact Alphabet is the corporate parent of Google."). But when a plaintiff states a claim for vicarious copyright infringement, the determining factor for finding liability is not the relationship between the corporate parent and its wholly-owned subsidiary itself, but the *nature* of that relationship. *See, e.g.*, *Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1326 (D. Mass. 1994) (noting that the concept of vicarious liability in copyright law differs from the analogous concept in agency law).

22
23
24

Defendants argue, wrongly, that the nature of the relationship between Alphabet and Google, as it pertains the events of this case, forecloses such a claim. But under *Twombly*, to survive a defendant's motion to dismiss, the plaintiff need only allege "enough facts to state a claim to relief that is plausible

25
26
27
28

---

[9] The *Stability AI* court held oral arguments on defendants' motion to dismiss the amended complaint on May 8, 2004, after issuing its tentative ruling on the motion. *See* ECF Nos. 193, 194. The court has yet to issue its final order.

on its face." *Twombly*, 550 U.S. at 570. Indeed, Plaintiffs are not required to plead with specificity the details of the formal relationship between Defendants even under the heightened pleading standards under Rule 9. *See Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC (ADSx), 2022 WL 1599868, at *5 n.4 (C.D. Cal. Jan. 28, 2022) (holding that even under Rule 9. "[p]rior to discovery, Plaintiff cannot be expected to know the precise relationship between members of the Hyundai corporate family"). Thus, Plaintiffs need only plausibly allege the two prongs of the vicarious copyright liability test: (1) that Alphabet exercised the requisite control over Google; and (2) that Alphabet derived a direct financial benefit from Google's infringement of Plaintiffs' Works. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir.1996) (stating standard); *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 936 (N.D. Cal. 2019) (same). Plaintiffs satisfy this burden.

### 1.       Alphabet Exercises Control Over Google

Plaintiffs allege that, during the relevant period, Alphabet managed and directed Google's businesses or affairs and Google acted under Alphabet's actual and apparent authority. ¶¶ 19, 58–60. Alphabet established Google as its agent with respect to the development and marketing of its AI image products. Alphabet therefore exercised "control" over Google because it had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *see Routt v. Amazon.com, Inc.*, 584 Fed. App'x 713, 714 (9th Cir. 2014) ("A defendant has control over a third party's infringing conduct when the defendant can directly put an end to that conduct."); *see also Howard Johnson Co., v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990) (finding control and responsibility for infringement where, among other things, officers of defendant were also officers of direct infringer). In *Fonovisa*, the Ninth Circuit found that a swap meet operator's "broad contract with its vendors" was sufficient to satisfy the control prong because it "had the right to terminate vendors for any reason whatsoever and through that right had the ability to control the activities of vendors on the premises." *Fonovisa*, 76 F.3d at 262. Similarly, here, Alphabet's control over Google included the "right and ability to supervise the infringing activity of Google when it trained the Google-LAION Models on Plaintiffs' works." ¶ 60.

Additionally, as Google's corporate parent, Alphabet had the practical ability to influence Google's 2023 decisions to expand Imagen commercially following January 2023 lawsuits against

competitors engaged in similar infringing conduct with LAION datasets. *See* ¶¶ 28–30. As the *Keck* court put it:

> [A] "practical ability" to stop or limit infringement does not require antecedent prevention. Instead, the question is whether Defendants have "the practical ability to police the infringing activities of third-part[ies]." Indeed, "[t]o escape imposition of vicarious liability, the reserved right to **police** must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability."

*Keck*, 369 F. Supp. 3d at 937–38 (citations omitted). Taken as a whole, Plaintiff has sufficiently alleged Alphabet's legal right and practical ability to "control the activities" of Google as it illegally harvested and exploited Plaintiffs' copyrighted Works, satisfying the first vicarious infringement prong. *See Fonovisa*, 76 F.3d at 262.

### 2. Alphabet Derives a Direct Financial Benefit from Google's Infringing Activity

A "financial benefit" exists where "the availability of infringing material acts as a draw for customers." *Cook v. Meta Platforms Inc.*, No. 4:22-CV-02485-YGR, 2023 WL 6370891, at *6 (N.D. Cal. Jan. 4, 2023) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). In *Cook v. Meta Platforms Inc.*, the Northern District held that the plaintiff had adequately pled this element by alleging that Facebook's "lenience toward infringement" financially benefitted the defendant, Meta, Facebook's corporate owner. *Id.* The court rejected the notion that the plaintiff must allege that the defendant "benefits specifically from infringement as compared to benefitting generally from a content-agnostic tool that might in some instances be used to infringe." *Id.* (quotation omitted). Here, Plaintiffs specifically allege that "Alphabet benefitted financially from the infringing activity of Google *when it trained the Google-LAION Models* on Plaintiffs' Works and continues to benefit financially *from the deployment of the Google-LAION Models*." ¶ 59 (emphasis added). In other words, Plaintiffs have alleged Alphabet has profited handsomely from its "lenience toward infringement," *Cook*, 2023 WL 6370891, at *6, satisfying the second vicarious infringement prong.

Plaintiffs have thus sufficiently alleged that Alphabet exercised control over Google's infringing activity and that Alphabet financially benefitted from the infringement. *See Fonovisa*, 76 F.3d at 262. The cases Defendants cite for the proposition that Plaintiffs' allegations are "conclusory" and insufficient to defeat a motion to dismiss are, therefore, wholly irrelevant. *See Payne v. Manilow*, No.

CV 18-3413 PSG (PLAx), 2019 WL 4143308, at *5 (C.D. Cal. Apr. 2, 2019) (unpled "common knowledge" and "common sense" facts insufficient to defeat motion to dismiss); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. C-13-3627 JSC, 2014 WL 280391, at *8 (N.D. Cal. Jan. 24, 2014) (failing to provide "*any* factual allegations that would make such a [vicarious copyright infringement] claim plausible" (emphasis added)); *Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-19 JW, 2009 WL 750201, at *2–4 (N.D. Cal. Mar. 20, 2009) (alleging merely that defendant profits "in some way" from infringing activity insufficient to state claim).

Defendants also ask the Court to follow decisions in unrelated cases where the courts purportedly dismissed claims against Alphabet based on alleged misconduct by its subsidiaries. For example, in *Lancaster v. Alphabet, Inc.*, the court dismissed Alphabet as a defendant because "Plaintiff does not make *any specific allegations* against Alphabet, Inc." No. 15-cv-5299-HSG, 2016 WL 3648608, at *7 (N.D. Cal. July 8, 2016) (emphasis added). But here, as noted, Plaintiffs have alleged specifically that Alphabet both controlled and financially benefitted from Google's training and deployment of the Google-LAION Models. These allegations, which the Court must take as true, are sufficient. *See, e.g.*, *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) ("[Plaintiff] is alleging that both of the Defendants did everything. The allegations must, at this stage, be taken as true. Time will tell if plaintiff can prove them."). Thus, Plaintiffs' allegations are a far cry from those found insufficient in *Lancaster* (and the other cases upon which Defendants rely). *See id.*; *compare Kremer v. Alphabet Inc.*, No. 2:23-cv-52, 2024 WL 923900, at *1 (M.D. Tenn. Mar. 4, 2024) (dismissing claims against Alphabet where the *only* allegation about Alphabet's relationship to Google was that its "brands include gmail, google.com, youtube, google ads, nest and others."); *Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646, at *2 (D.S.C. Mar. 31, 2019) (dismissing claims against Alphabet where the "complaint contains *only one* factual allegation regarding [Alphabet], namely, that it is Google's parent company" (emphasis added)). Because Plaintiffs have alleged facts sufficient to satisfy the pleading standards for vicarious liability, Defendants' motion must be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss Complaint.

Dated: July 18, 2024

By:  _____/s/ Joseph R. Saveri_____
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Christopher K.L. Young (State Bar No. 318371)
Evan Creutz (State Bar. No. 349728)
Elissa A. Buchanan (State Bar No. 249996)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:           jsaveri@saverilawfirm.com
                       cyoung@saverilawfirm.com
                       eabuchanan@saverilawfirm.com
                       ecreutz@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:           mb@buttericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle S. Wagner (*pro hac vice*)
Eura Chang (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:     (612) 339-6900
Facsimile:      (612) 339-0981
Email:           bdclark@locklaw.com
                       lmmatson@locklaw.com
                       aswagner@locklaw.com
                       echang@locklaw.com