DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC and ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JINGNA ZHANG, an individual; SARAH ANDERSEN, an individual; HOPE LARSON, an individual; and JESSICA FINK, an individual,<br><br>        Individual and Representative Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>        Defendants. | CASE NO.:  3:24-cv-02531-AMO<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        January 9, 2025<br>Time:        2 p.m.<br>Courtroom:  10<br>Judge:      Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

ARGUMENT .....................................................................................................................2

    I.      Plaintiffs Sarah Andersen And Hope Larson Failed To Allege Registration
           Of Their Works. ....................................................................................................2

    II.    Plaintiffs' Claims Should Be Dismissed As To Any Unidentified Works. ............7

    III.   Plaintiffs Have Not Plausibly Alleged That Any AI Model Is An Infringing
           Derivative Work. ..................................................................................................10

    IV.   Plaintiffs Fail To State A Claim For Vicarious Copyright Infringement
           Against Alphabet. .................................................................................................11

         A.     Plaintiffs Have Not Adequately Alleged That Alphabet Has The
                Right And Ability To Supervise Google's Alleged Conduct. ...................11

         B.     Plaintiffs Have Not Adequately Alleged That Alphabet Derived A
                Direct Financial Benefit From Google's Alleged Conduct. ......................13

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
    747 F.3d 673 (9th Cir. 2014) ........................................................................ 4

*Andersen v. Stability AI*,
    2023 WL 7132064 (N.D. Cal. Oct. 30, 2023) ....................................... 4, 7, 8, 9

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*,
    191 F. Supp. 3d 1007 (N.D. Cal. 2016) ........................................................ 7

*Brunson v. Cook*,
    2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ......................................... 5, 6

*Cal-Star Prod., Inc v. Fencepost Prods., Inc.*,
    2019 WL 13038581 (C.D. Cal. Apr. 18, 2019) ............................................ 12

*Cody v. Ring LLC*,
    2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ................................................. 6

*Cole v. John Wiley & Sons, Inc.*,
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ................................................. 7

*Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.*,
    2012 WL 12868358 (S.D. Cal. May 22, 2012) ............................................ 12

*Cook v. Meta Platforms Inc.*,
    2023 WL 6370891 (N.D. Cal. Jan. 4, 2023) ............................................... 14

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ..................................................................... 13

*Facebook, Inc. v. Power Ventures, Inc.*,
    2009 WL 1299698 (N.D. Cal. May 11, 2009) ................................................ 7

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ......................................................................... 13

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019) .............................................................................. 1, 3, 6, 7

*Hartmann v. Amazon.com, Inc.*,
    2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ............................................. 13

*Hartmann v. Google LLC*,
    2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ................................................. 13

*Hernandez v. Wells Fargo & Co.*,
    2019 WL 3017657 (N.D. Cal. July 10, 2019) .............................................. 12

*Howard Johnson Co. v. Khimani*,
    892 F.2d 1512 (11th Cir. 1990) ................................................................... 13

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ............................................................ 2, 10

*Keck v. Alibaba.com Hong Kong Ltd.*,
    369 F. Supp. 3d 932 (N.D. Cal. 2019) (Opp. 14) ...................................................... 12, 13

*Lafarga v. Lowrider Arte Mag.*,
    2014 WL 12573551 (C.D. Cal. July 18, 2014) ................................................................. 8

*Microsoft Corp. v. My Choice Software, LLC*,
    2017 WL 5643210 (C.D. Cal. Oct. 10, 2017) ............................................................... 7, 9

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
    2014 WL 280391 (N.D. Cal. Jan. 24, 2014) ................................................................... 12

*Netbula, LLC v. Chordiant Software, Inc.*,
    2009 WL 750201 (N.D. Cal. Mar. 20, 2009) ................................................................. 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................................................................... 13

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ...................................................................... 7, 9

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ........................................................................................... 8

*Plakhova v. Hood*,
    2017 WL 10592315 (C.D. Cal. June 20, 2017) ............................................................... 8

*Routt v. Amazon.com, Inc.*,
    584 F. App'x 713 (9th Cir. 2014) .................................................................................. 13

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ......................................................................................... 1

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ........................................................................................... 4

*Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*,
    2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ................................................................ 9

*Williby v. Hearst Corp.*,
    2017 WL 1210036 (N.D. Cal. Mar. 31, 2017) .......................................................... 11, 12

## STATUTES

17 U.S.C.
    § 101 ............................................................................................................................. 5
    § 103 ............................................................................................................................. 3
    § 407 ............................................................................................................................. 7
    § 409 ............................................................................................................................. 4
    § 411 ......................................................................................................................... 1, 7
    § 412 ......................................................................................................................... 3, 8

**RULES AND REGULATIONS**

37 C.F.R. § 202.3(b)(4) (2022) ......................................................................................... 6

37 C.F.R. § 202.20(b)(2)(ii) (1986) ................................................................................. 7

89 Fed. Reg. 58991, 58995 (July 22, 2024) ..................................................................... 3

**OTHER AUTHORITIES**

Compendium of U.S. Copyright Office Practices (3rd ed. Jan. 28, 2021) ......................... 3, 5, 6, 7

*Nimmer on Copyright* § 7.16[B][5][c] ............................................................................... 4

Plaintiffs' Opposition is an exercise in obfuscation. Rather than even attempting to defend the conclusory and often confusing allegations in their Complaint, Plaintiffs misconstrue Defendants' arguments, disregard established law, and invent new, unpleaded theories—none of which actually addresses Defendants' arguments. Plaintiffs' direct infringement claims should be circumscribed, and their vicarious infringement claim dismissed in its entirety.

As Defendant's explained in their Motion, black letter copyright law provides that a plaintiff cannot "su[e] for infringement until 'registration [of the work] ... has been made'" with the U.S. Copyright Office. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019) (quoting 17 U.S.C. § 411(a)); *accord* Mot. 8–9. Plaintiffs have failed to allege pre-suit registration of certain allegedly infringed images for two reasons. **First**, as a matter of Copyright Office policy and longstanding practice, compilation registrations do not cover previously-published material. Mot. 9–10. Plaintiff Sarah Andersen has failed to plausibly plead that her registrations, which are for compilations that include webcomics she previously published online, cover the images she contends Defendants infringed. After clearing away Plaintiffs' irrelevant and unsupported responses, all that remains is her argument that her online distribution of certain webcomics did not constitute publication under the Copyright Act. That is wrong as a matter of law, because the definition of "publication" encompasses distributing content via social media websites and licensing content to these websites for further distribution and display. It also ignores Ms. Andersen's own admission on this point: three of her registrations say on their face that they exclude "cartoons [that were] previously published online" (Compl., Ex. A at 10), and she does not plausibly allege that the comics at issue fall outside her own express exclusion. **Second**, the scope of a copyright registration is "limited by the deposit copy." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) (en banc). Plaintiff Hope Larson asserts infringement of an image that is not contained in the deposit copy of the asserted registration (or any other registration she proffers). Ms. Larson's response—that its omission is a "ministerial error," Opp. 10, does not salvage her claim; rather it confirms that her claim as to that image cannot proceed.

1   These registration flaws are not only dispositive in and of themselves, but also illustrate

2   why courts have repeatedly held that a copyright infringement complaint must specifically

3   identify all of the copyrighted works at issue in a case. Plaintiffs here have not done so. They

4   insist that they should be allowed to proceed based on an open-ended "nonexhaustive" and "not

5   … complete" list of allegedly infringed works. *See* Compl. ¶¶ 15–16. And Plaintiffs protest that

6   requiring them to identify "every single infringing Work" would amount to a heightened

7   pleading standard. Mot. 3–4. But identification of the relevant works at the pleading stage is

8   what *Twombly* (and *Fourth Estate*) require. Only if a work is identified can the plaintiff plausibly

9   plead the elements of an infringement claim—pre-suit registration, ownership, and

10  infringement—and only then can a defendant identify and raise fatal pleading problems like

11  those present in Plaintiffs' current claims.

12  Plaintiffs' other infringement theory—that Defendants' AI model Imagen is itself an

13  infringing derivative work—similarly warrants dismissal. Plaintiffs never acknowledge, much

14  less grapple, with authority in this district that addressed and rejected a materially identical

15  derivative-work theory advanced by the same counsel representing Plaintiffs in this case. *See*

16  Mot. 12; *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023).

17  Finally, based on nothing more than the allegation of a parent-subsidiary relationship,

18  Plaintiffs assert that Alphabet, a stock holding company, is vicariously liable for alleged

19  infringement by its corporate subsidiary, Google. That theory has been rejected by scores of

20  courts. Mot. 13–15. Plaintiffs cannot defend the claim as pleaded, so they invent new theories—

21  that Google was Alphabet's "agent" and that Alphabet profited from its "lenience," Opp. 13–

22  14—that were never pleaded and, in any event, fail on their own terms.

23  ## ARGUMENT

24  **I.     Plaintiffs Sarah Andersen And Hope Larson Failed To Allege Registration Of Their**

25  **Works.**

26  None of Plaintiffs' arguments addresses the central registration issue raised by Google's

27  motion: the Complaint does not adequately plead that Ms. Andersen's and Ms. Larson's

28  registrations cover the images that Google purportedly infringed. Without a registration covering

the images they have put at issue, their claims cannot proceed as to those works. *See Fourth Est.*, 586 U.S. at 302.

*Plaintiff Sarah Andersen.* The Complaint alleges that Google infringed Ms. Andersen's copyrights by using six of Ms. Andersen's images to train Google's generative AI models, and identifies five copyright registrations purporting to cover these six images. *See* Compl., Ex. B at 15–20 (listing six images at issue); *id.*, Ex. A at 7–11 (listing five registrations). Plaintiffs do not dispute that these five registrations are for compilations. *See* Opp. 8. They also do not dispute that registrations for compilations are different from registrations of the underlying images included in the compilations. *See* Opp. 7; *cf.* 17 U.S.C. § 103. They instead argue that because Ms. Andersen is allegedly the author of both the compilations and the underlying images contained therein, registrations of the compilations also cover the underlying images, even preexisting ones. Opp. 8. That misses the point. Regardless of whether compilation registrations *generally can* cover preexisting underlying material that is included in the compilation, they "do[] not cover any ***previously published material***." United States Copyright Office, *Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) ("Compendium") § 508.2 (emphasis added); *see* also Mot. 9. That "longstanding practice of precluding previously published material" remains applicable "even if the author of the collective work ... is the author of the previously published material and owns all of the rights in the material." Compendium § 1008.2; *see also* Compendium § 618.7(B)(2) (registration of collective works may cover underlying contributions by the same author "only if those contributions have not been previously published").[1] The Copyright Office confirmed that governing practice as recently as ten days ago. *See* 89 Fed. Reg. 58991, 58995 (July 22, 2024) ("Consistent with any collective work registration, any [works] included in the collective work that were previously published … are automatically excluded from the claim").

---

[1] This practice exists for good reason: among others, it "clarifies the date of publication for a particular work, which may assist the courts in assessing the copyright owner's eligibility for statutory damages and attorney's fees in an infringement action." Compendium § 1008.2; *see also* 17 U.S.C. § 412 (no statutory damages or fees for infringements commenced after first publication and before registration, unless registration is made within three months of first publication).

Plaintiffs cite a hodgepodge of authorities in response, but none discusses registration of previously published material in compilations. The Opposition's principal authority, *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, concerns whether a court should defer to the Copyright Office's reading about what information must be included in a valid application for registration under 17 U.S.C. § 409. 747 F.3d 673, 679, 686 (9th Cir. 2014). There, the Compendium and other Copyright Office regulations ***agreed*** with the copyright applicant that the author and title of each specific work in a compilation need not be separately listed in an application for it to be valid. *Id.* at 679–80, 682, 684–85. Finding the Copyright Office's "longstanding administrative interpretation" persuasive, the Court deferred to that interpretation. *Id.* at 685–86. But the opinion does not touch upon previously published material at all. In fact, it expressly quotes a Copyright Office regulation about the scope of a "[r]egistration of an ***unpublished*** 'collection'" to support its analysis. *Id.* at 682 (emphasis added). *Alaska Stock*'s holding is not at issue in this case, and if anything, it counsels in favor of the direct and repeated language in the Compendium and the Copyright Office's filings in courts around the country that compilation registrations do not cover any underlying work that has been previously published (*see* Mot. 9–10). Plaintiffs' other authorities fare no better, because none suggests a compilation registration covers previously published material. *Cf. Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 989 (9th Cir. 2017) (no discussion about registration of previously published material in a compilation); *Nimmer on Copyright* § 7.16[B][5][c] (same); *Andersen v. Stability AI*, 2023 WL 7132064, at *4 (N.D. Cal. Oct. 30, 2023) (assessing whether the plaintiffs needed to identify the copyrighted works at issue, not whether their copyrighted works were covered by the registrations they pleaded).

Lacking any supporting authority for the legal proposition they advance, Plaintiffs alternatively claim that three of the six images Ms. Andersen included in her compilations have not been previously published even though they were posted by Ms. Andersen on X (formerly known as Twitter) prior to the registration dates of the compilations. Opp. 8–9. That argument too is without legal basis. The Opposition cites a string of cases holding that the mere act of posting a work on the internet does not constitute publication under the Copyright Act, Opp. 8–9,

but ignores the critical difference between posting on the internet in general, and posting on X and other social media platforms such as Facebook and Instagram. Posting on these platforms not only distributes the works to the general public, but also grants a license to the platforms to further display, distribute, and sublicense these works,[2] which is more than enough to constitute "publication." *See* 17 U.S.C. § 101 ("The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication"). Again, the Compendium is in accord: "[p]ublication occurs when copies of a photograph are offered to clients, including but not limited to … ***websites with a license permitting further distribution or display of the photograph***." Compendium § 1906.1 (emphasis added).

The analysis in *Brunson v. Cook*, 2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023), is instructive. Confronted with an identical question, the *Brunson* court observed that because "the fundamental purpose of social-media platforms such as Twitter and Instagram is for viewers to share and re-share content posted by creators," a work is published under the Copyright Act "when it was made available on … Twitter, where it could be viewed and shared by the public." *Brunson*, 2023 WL 2668498 at *11–13. The *Brunson* court "in the alternative [found] that publication nonetheless occurs when a work is made available to YouTube, Instagram, and

---

[2] X's terms of service at the time Ms. Andersen posted each image include virtually identical language stating that:

> By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of the world and to let others do the same. You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use.

Twitter Terms of Service (effective June 18, 2020), https://x.com/en/tos/previous/version_15; *see also* Twitter Terms of Service (effective January 27, 2016), https://x.com/en/tos/previous/version_10. Twitter Terms of Service (effective May 18, 2015), https://x.com/en/tos/previous/version_9.

Twitter due to the terms of use or services to which a creator on these platforms must agree in order to post the work to the respective platforms." *Id.* at *13–14 (citing Compendium, holding that the plaintiff "clearly offered to distribute the work to these respective platforms for the purposes of further distribution" (cleaned up)). The same reasoning applies here: Ms. Andersen's images were published on X, which could and did further display, distribute, and sublicense these images. They were thus published before her compilation registrations and not covered by those registrations. Claims based on these unregistered images cannot proceed for lack of registration. *See Fourth Est.*, 586 U.S. at 302.

Lastly, the Opposition ignores the three other images at issue, which come from compilations whose certificates of registration expressly exclude previously published material. *See* Mot. 10 (discussing Compl., Ex. A at 7–8, 10). Because the Complaint fails to plausibly allege that the images at issue fall outside the express exclusion in these registrations, Ms. Andersen's claims based on these three images should be dismissed. *See* Mot. 11. In failing to address this point her Opposition, Ms. Anderson has conceded it. *See, e.g.*, *Cody v. Ring LLC*, 2024 WL 735667, at *7 n.4 (N.D. Cal. Feb. 22, 2024).

**Plaintiff Hope Larson.** One of the works at issue for Ms. Larson is "training image 2," which was purportedly covered by a registration for the book "Chiggers." Comp., Ex. B at 3. But that image is nowhere to be found in the certified deposit copy for "Chiggers" from the Library of Congress. *See* Mot. 12. The "Chiggers" registration thus does not cover "training image 2," *id.*, and an action for any alleged infringement of "training image 2" must be dismissed for failure to state a claim. *See Fourth Est.*, 586 U.S. at 302.

The Opposition's counterarguments again miss the point. Google's Motion is not about whether a book and its jacket can be registered as a single unit of publication.[3] *See* 37 C.F.R. § 202.3(b)(4) (2022). It is also not about what edition of work a claimant must submit to the Library of Congress to satisfy the deposit requirement under the Copyright Act or the Copyright

---

[3] In any event, "Chiggers" was not registered as a single unit of publication. Its registration record does not include an annotation such as "Basis for registration: Unit of publication," which would appear for all works so registered. *See* Compendium § 1103.4; *cf.* Compl., Ex. A at 3.

1   Office's regulations. *See* 17 U.S.C. § 407; 37 C.F.R. § 202.20(b)(2)(ii) (1986). And despite

2   Plaintiffs' mischaracterization, Google's motion does not seek to "invalidate Ms. Larson's

3   registered copyright." Opp. 11. Rather, the problem is that Ms. Larson's registration for

4   "Chiggers" simply does not cover "training image 2," because "training image 2" was not

5   included in the deposit copy of "Chiggers." *See* Mot. 12; Compendium § 504.2 (registration

6   "only covers the material that is included in the deposit copy(ies)" and "does not cover

7   authorship that does not appear in the deposit copy(ies)"). Any claim based on "training image

8   2" must be dismissed for failure to plead registration.

9   **II.      Plaintiffs' Claims Should Be Dismissed As To Any Unidentified Works.**

10          Decisions requiring a complete identification of the copyrighted works in the operative

11  pleading are legion. *See* Mot. 6 (collecting cases). Plaintiffs do not cite a single case permitting

12  copyright infringement claims to proceed based on an open-ended list of copyrighted works. In

13  every case relied on by Plaintiffs, the works at issue were identified or limited in scope.[4] Nor do

14  they have any substantive response to the requirement that they identify the works at issue or the

15  cases holding that a copyright plaintiff cannot "list certain works that are the subject of an

16  infringement claim, and then allege that the claim is also intended to cover other, unidentified

17  works." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012).

18          That requirement makes eminent sense. Identifying the works at issue is necessary both

19  to plead a plausible claim and to provide fair notice of that claim to Defendants. Mot. 7. This

20  case illustrates the importance of that modest pleading burden. "[Section] 411(a) bars a copyright

21  owner from suing for infringement until 'registration [of the work] ... has been made'" with the

22  U.S. Copyright Office. *Fourth Est.*, 586 U.S. at 302 (quoting 17 U.S.C. § 411(a)). Unless the

---

23

24          [4] *See Andersen v. Stability AI Ltd.*, 2023 WL 7132064, at *4 (N.D. Cal. Oct. 30, 2023)
     (concluding that Andersen's claims were "limited to the collections which she has registered");
25  *Microsoft Corp. v. My Choice Software, LLC*, 2017 WL 5643210, at *3 (C.D. Cal. Oct. 10, 2017)
     (complaint "described the type of software and software components that were sold," including
26  Windows 10, Windows 7, Office 365, Office 2013, Office 2010); *Autodesk, Inc. v. Kobayashi +
     Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1022 (N.D. Cal. 2016) (complaint "provide[d] a list
27  of nine Autodesk copyright registrations"); *Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL
     1299698, at *3 (N.D. Cal. May 11, 2009) (complaint asserted infringement of the "Facebook
28  website"); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1121 (C.D. Cal.
     2001) (complaint "identifie[d] copyrights involving their magazines").

1   asserted works are named in the complaint, plaintiffs can skirt this threshold registration

2   requirement set forth by statute and in the Supreme Court's decision in *Fourth Estate*. Only if the

3   works are identified in the complaint can the Court and the defendant assess whether there is a

4   registration for that work, whether the alleged registration actually covers the work being

5   asserted, whether the work was registered before the infringement began (which determines the

6   availability of statutory damages, 17 U.S.C. § 412), and whether there are other issues with the

7   registration. Plaintiffs' complaint—with its manifold registration problems—proves the point.

8   *See supra* 2–7.

9          Identification of the works at issue is also necessary for a Plaintiff to plausibly plead

10  ownership and to enable the defendant to assess what defenses it may have to the infringement

11  claim. *See, e.g.*, *Plakhova v. Hood*, 2017 WL 10592315, at *2 (C.D. Cal. June 20, 2017)

12  ("Without specifically identifying the exact works and the instances of infringement, Plakhova

13  cannot sufficiently allege direct copyright infringement."). Plaintiffs try to characterize this

14  straightforward requirement as a "heightened [pleading] standard," Opp. 5, but it merely follows

15  from *Twombly*'s plausibility standard, Rule 8's requirement of fair notice to the defendant, and

16  the work- and infringement-specific nature of a copyright infringement claim. *See Perfect 10,*

17  *Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017); *Lafarga v. Lowrider Arte Mag.*, 2014

18  WL 12573551, at *3 (C.D. Cal. July 18, 2014) ("While [plaintiff] correctly acknowledges the

19  *Twombly* requirement of a short and plain statement, under Rule 8(a)(2), courts often require the

20  plaintiff to identify the particular work that is the subject of the copyright claim.").

21          *Andersen v. Stability AI Ltd.,* 2023 WL 7132064 (N.D. Cal. Oct. 30, 2023), is against the

22  weight of authority and provides scant support for Plaintiffs' position. In that case, Sarah

23  Andersen, also a plaintiff here, alleged that her works appeared in a much larger LAION dataset

24  of "five billion images," LAION-5B, used by Stability AI to train its image-diffusion model. *Id.*

25  at *2, *4. Ms. Andersen asserted Stability AI infringed "over two hundred Works" covered by 16

26  registrations attached to her complaint. *Id.* at *4. While Judge Orrick did not require Andersen to

27  identify her "specific works," the court did "limit[]" Andersen's claims to the 16 registrations.

28  *Id.* At minimum, *Andersen* confirms that Plaintiffs' claims should be limited to works covered by

1    the registrations in Exhibit A. *See id.* at *4.

2           But Plaintiffs here want to claim more while pleading less. In insisting that they need not

3    identify "every single infringing Work at issue in their Complaint," Mot. 3, Plaintiffs apparently

4    object to limiting their claims to the images listed in Exhibit B or the registrations listed in

5    Exhibit A. Yet nowhere do Plaintiffs plead even an approximate number of works at issue or the

6    universe of relevant registrations. Defendants are left to guess whether this case is about the 10

7    registrations and 19 images mentioned in the complaint, Compl., Exs. A, B, or the "over two

8    hundred works" mentioned in *Andersen*, 2023 WL 7132064, at *4, or some undefined (and to

9    Defendants, unknowable) set of "all of Plaintiffs' works that were available online," Opp. 5. That

10   is not fair notice under any standard.

11          Next, citing pre-*Fourth Estate* case law, Plaintiffs conflate the requirement that they

12   identify every work with the burden of identifying every instance of infringement. *See, e.g.*,

13   *Microsoft v. My Choice Software*, 2017 WL 5643210, at *3 (concluding, in a case about

14   infringing software sales, that alleging details about "some but not all" infringing sales was

15   sufficient to state a claim); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114,

16   1120 (C.D. Cal. 2001) ("Requiring a statement of each and every example [of infringement]

17   would defeat the regime established by Rule 8.") (pre-*Twombly*). Whether a plaintiff must

18   "allege every instance of infringement …. is distinct from requiring that a plaintiff identify the

19   works which have been infringed." *Warner Bros. Ent. Inc. v. Random Tuesday, Inc.*, 2020 WL

20   12762735, at *12 (C.D. Cal. Nov. 9, 2020). Defendants have not argued that Plaintiffs must, at

21   the pleading stage, supply an exhaustive list of all alleged infringements. While Plaintiffs will

22   need to do so by a deadline well before the end of the discovery process to allow defendants to

23   rebut the specific charges of infringement, that is not what Defendants are arguing for here.

24          Plaintiffs also miss the mark in relying on their class-wide allegations to justify the

25   inadequacy of their own individual allegations. The claims in this case do not involve "hundreds

26   of millions of images" or "thousands" of copyright owners. Opp. 4. The claims as pleaded

27   involve four plaintiffs, 10 registrations, and 19 alleged infringements. *See* Compl. ¶¶ 15–16;

28   Compl., Exs. A, B. And, as Plaintiffs do not dispute, having reviewed and searched the LAION-

1   400M database for copies of their works before suit, they have no excuse for failing to provide a

2   complete list of asserted works. *See* Mot. 8.

3          In short, Defendants simply request a complete identification of the asserted works

4   instead of Plaintiffs' vague, open-ended, "nonexhaustive" list. *See* Compl. ¶¶ 15–16. Only

5   Plaintiffs know what works they own, have registered, have licensed, and contend to be

6   infringed. Defendants should not be forced to guess.

7   **III.    Plaintiffs Have Not Plausibly Alleged That Any AI Model Is An Infringing Derivative**

8          **Work.**

9          The Opposition offers no meaningful defense of Plaintiffs' theory that the Imagen model

10  is an infringing derivative work. Plaintiffs do not dispute that, to plead a claim, they must allege

11  that the allegedly infringing work is substantially similar to the protected aspects of the original

12  work. *See* Mot. 13. But Plaintiffs do not point to any allegations that plausibly suggest Imagen is

13  substantially similar in protected expression to their works. The Court need go no further to

14  dismiss Plaintiffs' claim that the model itself is an infringement.

15         Notably, Plaintiffs do not acknowledge—much less distinguish—Judge Chhabria's on-

16  point decision in *Kadrey*, which rejected a virtually identical derivative-work theory, supported

17  by similarly sparse allegations and advanced by the same counsel representing Plaintiffs in this

18  case. *See* Mot. 12; *Kadrey*, 2023 WL 8039640, at *1. Instead, Plaintiffs point to a tentative ruling

19  issued by Judge Orrick, which (if adopted) would allow copyright claims over Stable Diffusion,

20  the AI model central to *Andersen*, to proceed. *See* Opp. 11–12 (citing *Andersen*, No. 3:23-cv-

21  201, ECF No. 193 (N.D. Cal. May 7, 2024)). While Plaintiffs claim *Andersen* presents a "similar

22  argument" concerning derivative works (Opp. 11), that is not the case, as the *Andersen* complaint

23  includes lengthy allegations about the Stable Diffusion AI model that are absent with respect to

24  Google's Imagen model here. *Compare* Compl. ¶ 6, *with Andersen*, No. 3:23-cv-00201, ECF No.

25  129 at 27–49, Exs. D–E, G–H (Nov. 29, 2023) (dozens of pages of factual allegations and

26  exhibits concerning the Stable Diffusion model's functioning and output). Indeed, the Opposition

27  does not identify a single case that suggests Plaintiffs' cursory, one-sentence allegation is

28  sufficient to state a claim. Plaintiffs nonetheless ask that this Court allow their derivative-work

theory to proceed—not based on any actual authority, but because this case involves "cutting-edge" technology and "unresolved" (and unspecified) "factual questions." Opp. 12. The novelty of Plaintiffs' argument only reinforces the need for concrete factual allegations plausibly showing substantial similarity between the model and the protected aspects of Plaintiffs' copyrighted images.

## IV.     Plaintiffs Fail To State A Claim For Vicarious Copyright Infringement Against Alphabet.

Plaintiffs' Opposition asks the Court to believe that their vicarious infringement claim is based on more than just "the parent-subsidiary relationship between Alphabet and Google." Opp. 12. But the Complaint refutes that contention. The only specific allegations against Alphabet are that "*[a]s the corporate parent of Google*, Alphabet had the right and ability to supervise the infringing activity of Google" and "benefitted [sic] financially from the infringing activity." Compl. ¶¶ 58–60 (emphasis added). Those allegations run headlong into the law foreclosing vicarious liability based solely on a parent-subsidiary relationship. Mot. 14–15. And they are textbook examples of formulaically parroting the elements of a cause of action. *Id.* at 13–14. Indeed, Plaintiffs' "Factual Allegations" never mention Alphabet, much less plausibly allege facts showing Alphabet's vicarious liability. *See* Compl. ¶¶ 21–49.

If Plaintiffs' meager allegations sufficed to plead vicarious liability, then every stock holding company like Alphabet would be subjected to protracted litigation for their subsidiaries' alleged misconduct, no matter the remote nature of their alleged involvement. That is not the law. Mot. 13–15. All of Plaintiffs' attempts to paper over these pleading defects fail.

### A.     Plaintiffs Have Not Adequately Alleged That Alphabet Has The Right And Ability To Supervise Google's Alleged Conduct.

Plaintiffs argue that they satisfy the "right and ability to supervise" (or "control") element by alleging that Google acted as Alphabet's "agent." Opp. 13 (citing Compl. ¶ 19). But a parent corporation can only be vicariously liable for its subsidiary's conduct under an agency theory "when the parent so controls the subsidiary as to cause the subsidiary to [ ] become merely the instrumentality of the parent." *Williby v. Hearst Corp.*, 2017 WL 1210036, at *4 (N.D. Cal. Mar.

31, 2017) (citation omitted). To clear that high bar, a plaintiff must allege "1) a manifestation by

the principal that the agent shall act for the principle; (2) acceptance by the agent of the

undertaking; and (3) an understanding between the parties that the principal is in control of the

undertaking." *Id.* Plaintiffs allege nothing like that here. And their vague and unelaborated

allegations regarding the "Defendants' agents" (Compl. ¶ 19) have consistently been rejected as

insufficient for pleading an agency relationship. *See, e.g.*, *Cal-Star Prod., Inc v. Fencepost

Prods., Inc.*, 2019 WL 13038581, at *4 (C.D. Cal. Apr. 18, 2019) ("conclusory statement" that

"each of the Defendants … is and was the agent, servant, employee, representative, co-

conspirator, principal, affiliate and/or alter ego of the other"); *Connecticut Gen. Life Ins. Co. v.

Earl Scheib, Inc.*, 2012 WL 12868358, at *5 (S.D. Cal. May 22, 2012) (allegations that "each

Defendant" was "the agent ... of the other" and gave "consent and permission"); *Hernandez v.

Wells Fargo & Co.*, 2019 WL 3017657, at *2 (N.D. Cal. July 10, 2019) (similar).

   To actually plead the "control" prong, Plaintiffs must plausibly allege that Alphabet had

"a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do

so." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, 2014 WL 280391, at *7 (N.D. Cal. Jan. 24, 2014)

(citation omitted). The Opposition only confirms that Plaintiffs have failed to allege Alphabet's

control. Plaintiffs rotely recite the element and reassert their "corporate parent" allegation

without elaboration. Opp. 13 (citing Compl. ¶ 60). That does not move the needle.[5] Mot. 13–15.

And Plaintiffs' cited cases—none of which arises in the parent-subsidiary context—only

underscore the insufficiency of their allegations. Opp. 13–14. In *Keck v. Alibaba.com Hong

Kong Ltd.*, 369 F. Supp. 3d 932, 936–38 (N.D. Cal. 2019) (Opp. 14), the plaintiff pled in

extensive detail how Alibaba purportedly controlled the infringing conduct of third-party

merchants on its platform, including because it allegedly oversaw the day-to-day operation of the

marketplace, guided merchants regarding the layout of their stores, facilitated their transactions,

---

[5] Plaintiffs write that "as Google's corporate parent, Alphabet had the practical ability to
influence Google's 2023 decisions to expand Imagen commercially following January 2023
lawsuits against competitors engaged in similar infringing conduct with LAION datasets." Opp.
13 (citing Compl. ¶¶ 28–30). But that is not alleged in the Complaint, and Plaintiffs' cited
allegations concern Google, not Alphabet. Regardless, that assertion is also premised solely on
the parent-subsidiary relationship.

could terminate the merchants and reject their unlawful content, and was specifically notified about infringing material but failed to remove it. And even then, whether the plaintiff adequately pleaded control was a "close call." *Id.* at 937. *See also* Opp. 13 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261, 263 (9th Cir. 1996) (holding "swap meet" operator had control over third-party vendors' infringing conduct where it organized the meet, decided which vendors could access the area, affirmatively patrolled their booths, and could "exclude any vendor for any reason" pursuant to a "broad contract")).[6]

Plaintiffs' allegations bear no resemblance to those in *Keck* or *Fonovisa*. Nor is it a close call. Plaintiffs plead no specific facts relevant to the control inquiry, let alone ones that would satisfy it. Conclusory allegations and a parent-subsidiary relationship are not enough. *See, e.g.*, *Hartmann v. Google LLC*, 2022 WL 684137, at *8 (S.D.N.Y. Mar. 8, 2022); Mot. 13–15.

## B.      Plaintiffs Have Not Adequately Alleged That Alphabet Derived A Direct Financial Benefit From Google's Alleged Conduct.

Plaintiffs similarly fail on the "direct financial benefit" prong. Opp. 14–15. "The essential aspect" of that inquiry "is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Here too, Plaintiffs cannot satisfy the element with their bare "corporate parent" allegation. Compl. ¶ 59. Courts uniformly reject near-identical allegations as insufficient. *See, e.g.*, *Hartmann v. Amazon.com, Inc.,* 2021 WL 3683510, at *9 (S.D.N.Y. Aug. 19, 2021) (dismissing vicarious infringement claim against Amazon that "relie[d] solely on the fact of Amazon Digital's subsidiary status" and merely "recite[d]" the element); *Hartmann v. Google*, 2022 WL 684137, at *8 (same, where complaint alleged "Google received a direct, financial benefit; financial advantages; and/or other economic consideration from YouTube's infringing

---

[6] Plaintiffs also cite *Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715–16 (9th Cir. 2014), which affirmed the *dismissal* of a vicarious infringement claim for failure to adequately plead control, and *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173–75 (9th Cir. 2007), which affirmed the *denial* of a preliminary injunction because the movant did not establish a likelihood of success on the control prong. Opp. 13. Neither case—nor Plaintiffs' cherry-picked quotations therefrom (*id.*)—helps their claim here. And *Howard Johnson Co. v. Khimani*, 892 F.2d 1512 (11th Cir. 1990), which concerned an appeal from a civil contempt order in a trademark infringement case, has *nothing* to do with vicarious copyright infringement. Opp. 13.

1  activities") (cleaned up); *cf. Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 750201, at *2

2  (N.D. Cal. Mar. 20, 2009) (the "mere fact that a defendant is an officer and shareholder of an

3  infringing corporation is 'too attenuated' to show a 'direct' financial interest") (cleaned up).

4        Plaintiffs rely solely on *Cook v. Meta Platforms Inc.*, 2023 WL 6370891 (N.D. Cal. Jan.

5  4, 2023) (Opp. 14), but that case is uninstructive. In *Cook*, the plaintiff alleged that Meta—the

6  owner and operator of Facebook—earned revenue from "selling advertisement space to

7  advertisers," that it allowed advertisers to post infringing advertisements and helped them target

8  their preferred audience, and that its "lenience toward" such "advertisements draws advertisers to

9  Facebook." *Id.* at *1, *6.[7] The court held that those allegations "support[ed] the inference" that

10  Meta financially benefited from its "alleged lenience toward infringement." *Id.* at *6.

11        Here, in marked contrast, Plaintiffs do not plead ***any*** facts describing how Alphabet was

12  "lenient" toward Google's allegedly infringing conduct, how any supposed lenience drew any

13  customers anywhere, or how Alphabet benefited financially from any such lenience. Plaintiffs'

14  out-of-left-field assertion that "Alphabet has profited handsomely from its 'lenience'" (Opp. 14)

15  is unpleaded, unsupported, and cannot save their claim.

16                          <u>**CONCLUSION**</u>

17        For these reasons, Defendants respectfully request dismissal of Plaintiffs' copyright

18  infringement claims as to works not named in the Complaint; all copyright infringement claims

19  asserted by Plaintiff Sarah Andersen for failure to allege valid registration; all copyright

20  infringement claims asserted by Plaintiff Hope Larson based on "Chiggers" for failure to allege

21  valid registration; Plaintiffs' copyright infringement claim based on the theory that Defendants'

22  AI models are an infringing derivative work; and the vicarious infringement claim against

23  Alphabet in its entirety.

24

25

26  _____

27        [7] The *Cook* complaint included extensive allegations about Meta's purportedly lenient policies and how it allegedly monetized and benefited financially from infringing

28  advertisements. *See Cook v. Meta Platforms Inc.*, Case No. 22-cv-02485-YGR, ECF No. 1, ¶¶ 65–89 (N.D. Cal. Apr. 22, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  August 1, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ David H. Kramer*
       David H. Kramer
       dkramer@wsgr.com
       Maura L. Rees
       mrees@wsgr.com
       Eric P. Tuttle
       eric.tuttle@wsgr.com

*Counsel for Defendants*
GOOGLE LLC and ALPHABET INC.